# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| MAXILL INC., an Ohio corporation,<br><br>    Plaintiff,<br><br>v.<br><br>LOOPS, LLC; and LOOPS FLEXBRUSH, LLC,<br><br>    Defendants. | C17-1825 TSZ<br>(consolidated with C18-1026 TSZ) |
| LOOPS, L.L.C.; and LOOPS FLEXBRUSH, L.L.C.,<br><br>    Plaintiffs,<br><br>v.<br><br>MAXILL INC., a Canadian corporation; and DOES 1-10,<br><br>    Defendants. | ORDER |

THIS MATTER comes before the Court to construe certain claim terms in United States Patent No. 8,448,285 (the "'285 Patent"), pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), and *Phillips v. AWH Corp.*, 415 F.3d

ORDER - 1

1303 (Fed. Cir. 2005). Having reviewed the parties' respective opening and responsive briefs, as well as the materials submitted therewith,[1] the Court enters the following order.

**Background**

The '285 Patent discloses a toothbrush, which is "compact in size and may be safely used by prison or other inmates," and a method of making it. '285 Patent at Col. 1, Lines 13-17, Ex. 1 to Choi Decl. (docket no. 29-2). The '285 Patent has 20 claims, three of which are independent, namely Claims 1, 11, and 18. Each independent claim discloses a "toothbrush" **10** having "an elongated body" **12** with "a head portion" **14** and "a handle portion" **16**. *Id.* at Col. 7, Lines 64-67; Col. 8, Lines 49-52; and Col. 10, Lines 1-3. The '285 Patent depicts an embodiment of the invention as follows:



*Id.* at Figs. 1-7 (docket no. 29-2 at 4).

---

[1] Loops, L.L.C. and Loops Flexbrush, L.L.C. have moved to strike the "report" of Eric Simon, which is in the form of a declaration, *see* Ex. 4 to Choi Decl. (docket no. 29-5), arguing that Simon's declaration is not purely in rebuttal and should have been provided by the deadline for "initial" expert reports, and it was nevertheless late, having been disclosed "seven minutes after the deadline" for rebuttal expert reports. The motion to strike, docket no. 30, is DENIED.

ORDER - 2

Another embodiment of the invention is illustrated as follows:



*Id.* at Figs. 8-9 (docket no. 29-2 at 5).

Each independent claim requires that the elongated body **12** & **102** be made from "a first material," while a "head" **104** be composed of "a second material." *Id.* at Col. 7, Line 65 - Col. 8, Line 1; Col. 8, Lines 50-53; and Col. 10, Lines 2-4. Claims 1 and 11 describe the head as having "a plurality of bristles" extending therefrom to form "a bristle brush" **15** & **106**. *Id.* at Col. 8, Lines 4-5 & 56-57. Claim 18 makes no reference to "bristles" or a "bristle brush." *See id.* at Col. 10, Lines 1-21. Claims 1 and 18 indicate that the first material (used in the elongated body) must be less rigid than the second material (used in the head). *See id.* at Col. 8, Lines 6-7; Col. 10, Lines 9-11. Claim 11 makes no comparison between the first material and the second material with respect to rigidity or flexibility. *See id.* at Col. 8, Lines 49-60. Claims 1 and 11 state that the elongated body is "flexible throughout," but Claim 18 does not include such language. *See id.* at Col. 7, Line 65; Col. 8, Line 50; Col. 10, Lines 1-21. Claim 11 envisions that the first material (of the elongated body) "substantially encases the second material at the

ORDER - 3

1  head portion." Col. 8, Lines 59-60. Neither Claim 1 nor Claim 18 contains a similar
2  limitation. *See* Col. 7, Line 64 - Col. 8, Line 7; Col. 10, Lines 1-21.

3  Claims 4 and 5, which depend from Claim 1, and Claims 13 and 14, which depend
4  from Claim 11, set forth specific parameters for the second material (used in the head).
5  Claims 4 and 13 require that the second material have "a durometer hardness of between
6  about 75 and about 95 on the Shore A scale." *Id.* at Col. 8, Lines 15-16 & 66-67. An
7  alternative requirement for the invention, as expressed in Claims 5 and 14, is that the
8  second material be selected from the enumerated substances.[2] *Id.* at Col. 8, Lines 17-29;
9  Col. 9, Lines 1-13. None of the dependent claims set forth a requisite durometer hardness
10 for the first material. The specification, however, states that a durometer hardness of ~75
11 to ~95 on the Shore A scale is "preferred" for the elongated body **12** & **102**, but that the
12 hardness "may vary, depending on the degree of safety desired and the selection of the
13 [first] material." *Id.* at Col. 4, Lines 26-31. The specification explains that "[a] harder
14 material may affect the need for more pressure exertion by the digit of the user." *Id.* at
15 Col. 4, Lines 28-29. The specification also lists a variety of extrudable elastomers from
16 which the elongated body (of the first material) might be formed; with one exception (the

---

[2] The materials identified in Claims 5 and 14 are as follows: "polyurethane, silicone, neoprene, EPDM, nitrile, fluoroelastomers, natural rubber, styrene-butadiene rubber, thermoplastic elastomers, polyvinyl alcohol, PMMA, polyamide, polyester terephthalate, polycarbonate, polyetherimide, polyethylene (LDPE, HDPE, LLDPE, and blends), polypropylene and copolymers, polysulfone, polyvinyl chloride, viton, PUNA nitrile, carboxylated nitrile, polysulfides, alpha olefin elastomers, conjugated diene elastomers, hydrogenated diene elastomers, ethylene carboxylate, ethylene-propylene-diene elastomers, functionalized ethylene-vinyl acetate, SB-diblock copolymers, SBS and SlBS-triblock copolymers, and acrylic rubber." *Id.* at Col. 8, Lines 17-29; Col. 9, Lines 1-13.

omission of polyurethane), the compounds are the same as those enumerated in Claims 5 and 14 with respect to the second material. *See id.* at Col. 2, Lines 38-50; *see also supra* note 2.

The parties disagree about the following claim terms, two of which appear in all three independent claims, one of which is included in only two of the independent claims, and one of which relates solely to Claim 11.

| Claim Term | Claim 1 | Claim 11 | Claim 18 |
|---|---|---|---|
| "first material" | X | X | X |
| "second material" | X | X | X |
| flexible "throughout" | X | X | |
| "substantially encases" | | X | |

The alleged infringers, Maxill Inc., an Ohio corporation, and Maxill Inc., a Canadian corporation (collectively, "Maxill"), contend that three of these terms, namely "first material," "second material," and "substantially encases," are indefinite, and that the other term, namely "throughout," should be construed to mean "in every part of." The patent owner, Loops, L.L.C., and its affiliate, Loops Flexbrush, L.L.C. (collectively, "Loops"), counter that the terms "first material," "second material," and "substantially encases" are not indefinite and that the Court need not interpret the term "throughout," which can be understood by its plain meaning. The Court agrees with Loops.

ORDER - 5

## Discussion

### A. Claim Construction Standards

The Court has both the authority and the obligation to construe as a matter of law the meaning of language used in a patent claim. *Markman*, 52 F.3d at 979. In doing so, the Court must consider the intrinsic evidence in the record, meaning the claims, the specification, and the prosecution history.[3] *Id.* The words of a patent claim are generally assigned their "ordinary and customary meaning." *Phillips*, 415 F.3d at 1312.[4] When, as is the situation here, the claim terms are clear enough to permit the trier of fact to perform its work, the Court need not engage in further analysis or attempt to rewrite or otherwise alter the language that has received the United States Patent and Trademark Office's imprimatur. *See Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001) ("*Markman* does not require a district court to follow any particular procedure in conducting claim construction. It merely holds that claim construction is the

---

[3] The specification is "the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315. If the specification reveals a definition given to a claim term that differs from the meaning it would otherwise possess, the inventor's lexicography trumps the ordinary and customary, or dictionary, construction. *Id.* at 1316. Similarly, the prosecution history evidences how the inventor understood the terms used in the patent. *Id.* at 1317. Because the prosecution history, however, represents the "ongoing negotiation" between the United States Patent and Trademark Office and the applicant, it might suffer from a lack of clarity and is often less useful for claim construction purposes than the specification. *Id.* In addition, although the prosecution history "can and should be used to understand the language used in the claims," it may not itself "enlarge, diminish, or vary" the limitations in the claims. *Markman*, 52 F.3d at 980.

[4] The ordinary and customary meaning of a claim term is the definition ascribed to it by "a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313. The context in which a claim term is used might also be instructive. *Id.* at 1314. In addition, the other claims of a patent might illuminate the meaning of a term, through consistent usage of the same term, or inclusion in a dependent claim of an additional term not present in the related independent claim. *Id.* at 1314-15.

province of the court, not a jury. . . . As long as the trial court construes the claims *to the extent necessary* to determine whether the accused device infringes, the court may approach the task in any way that it deems best." (emphasis added)); *see also* <u>Static Control Components, Inc. v. Lexmark Int'l, Inc.</u>, 502 F. Supp. 2d 568, 575-76 (E.D. Ky. 2007).[5]

B. **Indefiniteness Standards**

A patent is presumed valid. 35 U.S.C. § 282(a). Such presumption may be overcome on the ground of indefiniteness only if a patent's "claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." <u>Nautilus, Inc. v. Biosig Instruments, Inc.</u>, 572 U.S. 898, 901 (2014). An invalidity defense must be proven by "clear and convincing evidence." <u>Microsoft Corp. v. i4i Ltd. P'ship</u>, 564 U.S. 91, 95 (2011).

C. **Disputed Claim Terms**

1. **Words of Degree**

The claim terms that Maxill contends are indefinite involve words of degree, for example, (i) according to Claim 1, the first material "is less rigid" than the second

---

[5] In *Static Control*, the district court criticized one side's "exhortation to attach a synonym to self-defined and simple words" because it invited "a meaningless result that mocks the notion of construction." 502 F. Supp. 2d at 576. The district court used as an example the term "dog," which a party might argue, in light of intrinsic evidence, must be construed as weighing less than 50 pounds, and as a result, such party's accused dog is non-infringing because it is too heavy. *See id.* at 575. Determining whether a "dog" has a maximum weight would be an exercise in claim construction, but deciding whether "dog" means "canine" is a pointless endeavor, prompting the query of how an accused "dog" would infringe but an accused "canine" would not. *Id.*

ORDER - 7

material, (ii) pursuant to Claim 18, the second material is "more rigid" than the first material, and (iii) as required by Claim 11, the first material "substantially encases" the second material. Claim language "employing terms of degree has long been found definite where it provided enough certainty to one of skill in the art when read in the context of the invention." <u>Biosig Instruments, Inc. v. Nautilus, Inc.</u>, 783 F.3d 1374, 1378 (Fed. Cir. 2015).[6] The certainty that the law requires in patents is not greater than is reasonable and, in evaluating a claim for indefiniteness, the Court must take into account the inherent limitations of language, as well as the "modicum of uncertainty" that is the "price of ensuring the appropriate incentives for innovation." <u>See id.</u> at 1378-79 (quoting <u>Nautilus</u>, 572 U.S. at 909-10). A patent must merely be "precise enough to afford clear notice of what is claimed, thereby 'appris[ing] the public of what is still open to them.'" <u>Id.</u> at 1378 (quoting <u>Nautilus</u>, 572 U.S. at 909 (alteration in original) (quoting <u>Markman</u>, 517 U.S. at 373)).

---

[6] In <u>Biosig</u>, on remand from the Supreme Court, the Federal Circuit held that the term "spaced relationship" was not indefinite. The patent at issue was for a heart rate monitor that included an "elongate member" with a first and second half; each half contained a live electrode and a common electrode in "spaced relationship" with each other. 783 F.3d at 1376. The Federal Circuit reiterated its earlier analysis that an ordinarily skilled artisan would understand the claim language to require "the spaced relationship to be neither infinitesimally small nor greater than the width of a user's hands." <u>Id.</u> at 1382. The <u>Biosig</u> Court reasoned that the distance between the electrodes could not exceed the width of a user's hands because the patent claim required the electrodes to "independently detect electrical signals at two distinct points of a hand," and that an infinitesimally small distance between the electrodes was infeasible because it would effectively merge the electrodes into one detection point. <u>See id.</u> at 1383 (quoting <u>Biosig Instruments, Inc. v. Nautilus, Inc.</u>, 715 F.3d 891, 899 (Fed. Cir. 2013), <u>vacated</u>, 572 U.S. 898 (2014)). As a result, the Federal Circuit concluded that a skilled artisan "would understand the inherent parameters of the invention as provided in the intrinsic evidence." <u>Id.</u> at 1384.

ORDER - 8

1     The '285 Patent identifies in the specification and in two sets of dependent claims

2  a range of hardness or rigidity, as well as a variety of substances, for the first and second

3  materials. The range of hardness (~75 to ~95 on the Shore A scale) and the breadth of

4  viable elastomers permit the first and second materials to satisfy the requirement that one

5  of them (the first) be less rigid or more flexible than the other (the second). In arguing

6  that "first material" and "second material" are indefinite terms, Maxill attributes to Loops

7  a position that Loops has not taken, namely that the first material may be, at the same

8  time, less rigid and more rigid than the second material.

9     Claims 1 and 18 contain clear limitations to the contrary, which Loops has not

10 sought to avoid, and in connection with any claim that Claims 1 and/or 18 and/or their

11 dependent claims are infringed, Loops will be required to prove that the accused product

12 has an elongated body (composed of a first material) that is less rigid than a component

13 satisfying the requirements of a "head" (and made of a second material). On the other

14 hand, Claim 11 does not specify that the first and second material be comparably less or

15 more rigid, and thus, contrary to Maxill's assertion, the specification's reference to an

16 alternative embodiment in which "the first material is more rigid than the second

17 material," *see* '285 Patent at Col. 3, Lines 18-19, does not render the terms "first

18 material" and "second material" indefinite.

19    **2.    Common Words**

20    Claim 11 makes clear that, regardless of their relative hardness, the first material

21 (the elongated body) must be "flexible throughout," and the second material (the head)

22 must be "substantially" encased by the first material. The terms "flexible *throughout*"

23

1 and "*substantially* encases" contain easily understood, everyday or commonplace words.

2 "Throughout" generally means "from one end to the other," see Webster's Third New

3 Int'l Dictionary 2385 (1981),[7] and "substantially" indicates "largely but not wholly that

4 which is specified," see LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc., 275 F.3d

5 1347, 1354 (Fed. Cir. 2001) (quoting Webster's Ninth New Collegiate Dictionary 1176

6 (1983)). These words are reasonably precise, and further claim construction is therefore

7 unnecessary. See Biosig, 783 F.3d at 1383-84; see also Andrew Corp. v. Gabriel Elecs.,

8 Inc., 847 F.2d 819, 821-22 (Fed. Cir. 1988) (reversing the district court's conclusion that

9 the phrases "substantially equal" and "closely approximate" were indefinite).

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) The claim terms "first material," "second material," and "substantially encases" are not indefinite;

(2) Maxill's proposed construction of the claim term "flexible throughout" is rejected; and

---

[7] The Court declines to adopt Maxill's proposed interpretation of "throughout" as meaning "in every part of," for which Maxill cites two on-line, British dictionaries. See Jt. Claim Constr. Chart at 2 n.2 (docket no. 26). The connotation of "in every part of" applies more appropriately to a location, which can be discontinuous, as in Oxford/Lexico's examples "it had repercussions throughout Europe" and "the house is in good order throughout," see https://www.lexico.com/en/definition/throughout, and in Cambridge's example "grass grows throughout the world." Indeed, Cambridge recognizes that usage and context must be considered, defining "throughout," when referring to time, as "during the whole period of," as in the example "she was calm throughout her visit to the dentist." See https://dictionary.cambridge.org/us/dictionary/english/throughout. Maxill appears to acknowledge that the alternative interpretation "during the whole period of" does not apply, and the Court concludes similarly with respect to the construction "in every part of."

ORDER - 10

(3) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 10th day of July, 2019.

Thomas S. Zilly
United States District Judge

ORDER - 11