# Exhibit 1

Case No. 2:17CV01825 - TSZ

Proposed First Amended
Complaint (Counterclaim),
including Exhibits A to D thereto

MANN LAW GROUP
Phillip P. Mann
phil@mannlawgroup.com
1218 Third Ave., Suite 1809
Seattle, WA 98101
Phone: (206) 436-0900

LEWIS KOHN & WALKER, LLP
KENT M. WALKER (173700) (admitted pro hac vice)
kwalker@lewiskohn.com
15030 Avenue of Science, Suite 201
San Diego, CA 92128
Phone: (858) 436-1333
Fax: (858) 436-1349

Attorney for Defendant,
LOOPS, LLC and LOOPS FLEXBRUSH, LLC

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| MAXILL, INC., a Canadian corporation,<br><br>Plaintiff,<br><br>v.<br><br>LOOPS, LLC, a Washington Limited Liability Corporation, and LOOPS FLEXBRUSH, LLC, a Washington Limited Liability Corporation<br><br>Defendants.<br>———<br>LOOPS, LLC, a Washington Limited Liability Corporation, and LOOPS FLEXBRUSH, LLC, a Washington Limited Liability Corporation<br><br>Counterclaimant,<br><br>v.<br><br>MAXILL, INC., an Ohio corporation, and MAXILL, INC., a Canadian corporation. | **Case 2:17-CV-01825 - TSZ**<br><br>**ANSWER TO COMPLAINT;**<br><br>**FIRST AMENDED COUNTERCLAIM;**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Complaint filed: December 12, 2017<br>Trial date: None set |

Counterclaim defendants.

Defendants LOOPS, LLC and LOOPS FLEXBRUSH, LLC ("Defendant" or "LOOPS") hereby answer the complaint ("Complaint") of Plaintiff MAXILL, INC. ("Plaintiff" or "Maxill") as follows:

**NATURE OF THE ACTION**

1. Admitted.
2. Admitted.

**THE PARTIES**

3. Admitted.
4. Admitted.
5. Admitted.

**JURISDICTION AND VENUE**

6. Admitted.
7. Admitted.
8. Admitted.
9. Admitted.

**THE CONTROVERSY**

10. Admitted.
11. Admitted.
12. Admitted.
13. Admitted.
14. Admitted.
15. Admitted.
16. Admitted.
17. Admitted.
18. Admitted.

19. Admitted.

20. Admitted.

21. Admitted.

22. Admitted.

23. Admitted.

24. Admitted.

25. Admitted.

26. Admitted there is an actual controversy between Loops and Maxill. Denied that the ‘285 Patent is invalid and unenforceable. Denied that Maxill warrants a declaratory judgment and denied that Maxill does not infringe on the ‘285 Patent.

27. Denied.

28. Denied.

29. Admitted.

30. Admitted.

31. Denied.

32. Admitted that there is an actual controversy and denied that declaratory judgment of invalidity, unenforceability or noninfringement is warranted.

**COUNT ONE**

**Declaratory Judgement Regarding U.S. Patent No. 8,448,285**

**(Invalidity)**

33. LOOPS realleges paragraphs 1-32 of the Answer as set forth fully herein.

34. Denied.

35. Admitted that an actual and justiciable controversy exists with respect to the ‘285 patent. Denied that Maxill is entitled to declaratory judgement with respect to invalidity.

**COUNT TWO**

**Declaratory Judgement Regarding U.S. Patent No. 8,448,285**

**(Non-Infringement)**

36. LOOPS realleges paragraphs 1-35 of the Answer as set forth fully herein.

37. Denied.

38. Admitted that an actual and justiciable controversy exists with respect to the ‘285 patent. Denied that Maxill is entitled to declaratory judgement with respect to non-infringement.

**COUNT THREE**

**Declaratory Judgement Regarding U.S. Patent No. 8,448,285**

**(Patent Misuse)**

39. LOOPS realleges paragraphs 1-38 of the Answer as set forth fully herein.

40. Admitted that the ‘285 patent was obtained. Denied that it is being exploited or being used improperly.

41. Admitted that an actual and justiciable controversy exists with respect to the ‘285 patent. Denied that Maxill is entitled to declaratory judgement with respect to patent misuse.

**DENIAL OF PLAINTIFF’S PRAYER FOR RELIEF**

In response to the clause following paragraph 42 of the Complaint, Defendants deny the averments contained in the Request for Relief and further deny that Plaintiff is entitled to any relief whatsoever against Defendants.

**FIRST AFFIRMATIVE DEFENSE**

As and for a separate, distinct affirmative defense to the Complaint, Defendants allege: That the Complaint and each purported cause of action therein fails to state facts sufficient to constitute a cause of action against Defendants.

**SECOND AFFIRMATIVE DEFENSE**

As and for a separate, distinct affirmative defense to the Complaint, Defendants allege: Plaintiff has infringed valid and enforceable claims of the '285 patent and is liable to Defendants for all damages, exemplary damages for willful infringement, attorneys fees and costs available via Title 35 of the Federal statutes regarding patent infringement.

## THIRD AFFIRMATIVE DEFENSE

As and for a separate, distinct affirmative defense to the Complaint, Defendants allege: On information and belief, Plaintiff commenced this action for primary purpose of wrongfully harassing, intimidating, threatening and/or coercing Defendants and competition in the market.

## RESERVATION OF RIGHTS TO ALLEGE OTHER AFFIRMATIVE DEFENSES

Defendants hereby gives notice that they intend to rely upon such other and further defenses as may become available or apparent during the discovery proceedings in the action and hereby reserve the right to amend their Answer to Plaintiff's Complaint and to assert any such further defense or claim by appropriate motion.

## PRAYER FOR RELIEF

WHEREFORE, as to Plaintiff Maxill's Complaint, Defendants prays for entry of judgment as follows:

1. That Plaintiff take nothing by virtue of the Complaint;
2. For costs of suit incurred herein; and
3. For such other and further relief as the Court may deem just and proper.

## COUNTERCLAIM

For their counterclaim, Counterclaimant Loops, L.L.C. and Loops Flexbrush, L.L.C., appearing through undersigned counsel, states as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiffs Loops, L.L.C. and Loops Flexbrush, L.L.C. (collectively, "Loops") are Delaware limited liability companies with their principal places of business in Whatcom County, Washington.

2. Upon information and belief, Defendant Maxill Inc. ("Maxill Ohio") is a corporation incorporated and existing under the laws of the State of Ohio, and having a principal place of business at 181 N. Mecca St., Cortland, Ohio 44410.

3. This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, and more particularly 35 U.S.C. §§ 271 and 281. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4. Upon information and belief Maxill has purposefully availed itself of the privilege of suit in this judicial district, invoking the benefits and protections of the laws of the State of Washington.

5. Venue is proper in this judicial district pursuant to FRCP 13(a), Maxill Ohio's assertion of its Complaint in this judicial district and waiver of any objection to jurisdiction over the Counterclaim in response to the Complaint and 28 U.S.C. §§ 1391(b)-(d), and 1400(b).

## GENERAL ALLEGATIONS

6. Loops invents and sells personal care products designed for distribution in correctional and mental health facilities.

7. One of Loops' flagship products is the Loops Flexbrush®, a compact toothbrush with a flexible handle that cannot be fashioned into a weapon, making it ideal for use in these facilities.

8. Loops owns certain related intellectual property including United States Patent No. 8,448,285 (the "'285 Patent") entitled "Toothbrush and Methods of Making and Using Same." A true and correct copy of the '285 Patent is attached hereto as Exhibit A.

9. Loops owns certain related intellectual property including United States Patent No. 10,334,940 (the "'940 Patent") entitled "Composite Head Toothbrush Having Safety Features." A true and correct copy of the '940 Patent is attached hereto as Exhibit C.

Formatted: No underline

8.10. Upon information and belief, Maxill manufactures, promotes, distributes, imports and/or sells, among other things, personal care products to correctional and mental health facilities.

9.11. In or around 2016 or 2017, Maxill began promoting, offering to sell and/or selling a competing flexible toothbrush under the designation, SuperMaxx (the "SuperMaxx Product," as also referenced in the allegations of the Complaint).

10.12. Upon information and belief, Maxill manufactures and supplies Bob Barker Company, Inc. and others with the SuperMaxx Product.

11.13. Upon information and belief, Maxill is and has been at all times relevant hereto aware of the '285 Patent. Maxill has been aware of the '940 Patent and Loops' assertions of infringement of that patent since at least July 9, 2019.

**FIRST CLAIM FOR RELIEF**

**(Infringement of the '285 Patent)**

12.14. Loops hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 1312.

~~13.~~15. The '285 Patent was duly and legally issued on May 28, 2013. Loops is the sole owner of the '285 Patent.

~~14.~~16. Maxill is infringing the '285 Patent by making, manufacturing, promoting, marketing, advertising, distributing, importing, offering for sale and/or selling the SuperMaxx Product, which infringes, and thereby meets every element of, at least claims 1, 2-3, 6, 9, 11-12, and 15-16 of the '285 Patent literally and/or under the doctrine of equivalents. For example, the SuperMaxx Product directly includes and meets every element and limitation of at least claims 1, 2-3, 6, 9, 11-12, and 15-16 of the '285 Patent. By way of example, not limitation, a representative claim chart showing how the SuperMaxx Product infringes at least these claims of the '285 Patent is attached as Exhibit B.

~~15.~~17. Loops has been damaged and has suffered irreparable injury due to Maxill's acts of infringement, and will continue to suffer damages and irreparable injury unless their acts are enjoined.

~~16.~~18. Loops is informed and believes, and on that basis alleges, that Maxill has willfully infringed at least claims 1, 2-3, 6, 9, 11-12, and 15-16 of the '285 Patent entitling Loops to increased damages under 35 U.S.C. § 284, and that these deliberate acts in full view of at least claims 1, 2-3, 6, 9, 11-12, and 15-16 of the '285 Patent and the history between Loops and Maxill make this case exceptional entitling Loops to recover its attorneys' fees in prosecuting this action pursuant to 35 U.S.C. § 285.

**SECOND CLAIM FOR RELIEF**

**(Infringement of the '940 Patent)**

19. Loops hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 18~~9~~.

20. The '940 Patent was duly and legally issued on July 2, 2019. Loops is the sole owner of the '940 Patent.

21. Maxill is infringing the '940 Patent by making, manufacturing, promoting, marketing, advertising, distributing, importing, offering for sale and/or selling the SuperMaxx Product, which infringes, and thereby meets every element of, at least claims 1, 2, 4 and 6 of the '940 Patent literally and/or under the doctrine of equivalents. For example, the SuperMaxx Product directly includes and meets every element and limitation of at least claims 1, 2, 4, and 6 of the '940 Patent. By way of example, not limitation, a representative claim chart showing how the SuperMaxx Product infringes at least these claims of the '940 Patent is attached as Exhibit D.

Formatted: Underline

22. Loops has been damaged and has suffered irreparable injury due to Maxill's acts of infringement, and will continue to suffer damages and irreparable injury unless their acts are enjoined.

23. Loops is informed and believes, and on that basis alleges, that, since at least July 9, 2019, Maxill has willfully infringed at least claims 1, 2, 4 and 6 of the '940 Patent entitling Loops to increased damages under 35 U.S.C. § 284, and that these deliberate acts in full view of at least claims 1, 2, 4 and 6 of the '940 Patent make this case exceptional entitling Loops to recover its attorneys' fees in prosecuting this action pursuant to 35 U.S.C. § 285.

**PRAYER FOR RELIEF**

WHEREFORE, Loops prays for relief as follows:

A. That Maxill be adjudged to have infringed the '285 and '940 Patents under 35 U.S.C. §§ 271(a);

B. That Maxill, and their subsidiaries, divisions, affiliates, officers, agents, servants, employees and attorneys, and all those persons in active concert or participation with either of them be permanently restrained and enjoined under 35 U.S.C. § 283 from directly infringing the '285 and '940 Patents;

C. That the Court award Loops recovery of damages to compensate it for Maxill's infringement of the '285 and '940 Patents pursuant to 35 U.S.C. § 284 in an amount to be proven at trial;

D. That Maxill be adjudged to have willfully infringed the '285 and '940 Patents under 35 U.S.C. § 271 (a), and that the Court treble the amount of actual damages pursuant to 35 U.S.C. § 284;

~~D.~~E. That this action be adjudged an exceptional case, and that the Court award Loops its attorneys' fees incurred in connection with this action, pursuant to 35 U.S.C. § 285;

~~E.~~F. That the Court assess pre-judgment and post-judgment interest and costs of suit against Maxill and award such interest and costs to Loops pursuant to 35 U.S.C. § 284; and

~~F.~~G. That Loops receive such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs Loops, L.L.C. and Loops Flexbrush, L.L.C. hereby demand a trial by jury as to all claims and all issues triable by jury.

DATED: July 11, 2019

LEWIS KOHN & WALKER, LLP
MANN LAW GROUP

By: /s *Kent M. Walker*
KENT M. WALKER
kwalker@lewiskohn.com
Attorney for Defendant, Counterclaim Plaintiffs,
LOOPS, LLC and LOOPS FLEXBRUSH, LLC

MANN LAW GROUP
Phillip P. Mann

phil@mannlawgroup.com
1218 Third Ave., Suite 1809
Seattle, WA 98101
Phone: (206) 436-0900

# EXHIBIT A

## Case No. 2:17-CV-01825 - TSZ

### (U.S. Patent No. 8,448,285)

US008448285B2

(12) **United States Patent**
**Kayser**

(10) **Patent No.: US 8,448,285 B2**
(45) **Date of Patent: May 28, 2013**

(54) **TOOTHBRUSH AND METHODS OF MAKING AND USING SAME**

(75) Inventor: **Steven L. Kayser**, Ferndale, WA (US)

(73) Assignee: **Loops, LLC**, Ferndale, WA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 1070 days.

(21) Appl. No.: **11/563,671**

(22) Filed: **Nov. 27, 2006**

(65) **Prior Publication Data**

US 2007/0226931 A1 Oct. 4, 2007

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 10/920,822, filed on Aug. 18, 2004, now Pat. No. 7,334,286.

(51) **Int. Cl.**
***A46B 9/04*** (2006.01)
***A46B 5/02*** (2006.01)

(52) **U.S. Cl.**
USPC ....... **15/167.1**; 15/143.1; 15/144.1; 15/176.1; 15/176.5

(58) **Field of Classification Search**
USPC ............ 15/143.1, 167.1, 176.1, 176.4, 176.5, 15/176.6, 144.1
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 1,645,965 | A | * | 10/1927 | Neumerkel | 15/227 |
| 1,717,125 | A | * | 6/1929 | Spitz | 15/176.4 |
| 1,875,476 | A | * | 9/1932 | McNally | 15/176.4 |
| 1,908,510 | A | * | 5/1933 | Dodson | 15/176.4 |
| 1,939,001 | A | * | 12/1933 | Doll | 15/176.1 |
| 1,945,559 | A | * | 2/1934 | McNally | 15/176.4 |
| 2,706,825 | A | * | 4/1955 | Blakeman | 15/176.4 |
| 2,719,626 | A | | 10/1955 | Lermer | |
| 2,775,250 | A | | 12/1956 | Oxenrider | |
| 2,815,057 | A | | 12/1957 | Tupper | |
| 2,835,912 | A | * | 5/1958 | Pensky | 15/143.1 |
| D243,156 | S | | 1/1977 | Fentules | |
| 4,020,521 | A | * | 5/1977 | Velasquez | 15/172 |
| 4,234,087 | A | | 11/1980 | Pandak | |
| 4,615,635 | A | | 10/1986 | Kim | |
| 5,020,179 | A | * | 6/1991 | Scherer | 15/22.1 |
| 5,076,428 | A | | 12/1991 | Shaw | |
| 5,150,495 | A | * | 9/1992 | Discko et al. | 15/167.1 |
| D337,207 | S | | 7/1993 | Tiramani et al. | |
| D338,123 | S | | 8/1993 | Crawford | |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| EP | 336641 | | 10/1989 |
| JP | 2003-265234 | * | 9/2003 |
| WO | 0129128 | | 4/2001 |

*Primary Examiner* — Randall Chin
(74) *Attorney, Agent, or Firm* — Lewis Kohn & Fitzwilliam LLP; Timothy W. Fitzwilliam; Kari Moyer-Henry

(57) **ABSTRACT**

The disclosed embodiments relate to a toothbrush and methods of making it. The toothbrush may have an elongated body being composed of a first material and having a head portion and a handle portion, a head composed of a second material and disposed in the head portion of the elongated body, and a plurality of bristles extending from the head forming a bristle brush. The method of making a toothbrush may include molding a head of a first material, inserting the head into an elongated body mold, molding an elongated body having a head portion and a handle portion of a second material onto the head, and inserting bristles into the head. The first material is more rigid than the second material.

**20 Claims, 3 Drawing Sheets**






U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 5,291,878 | A | | 3/1994 | Lombardo et al. | |
| 5,375,711 | A | | 12/1994 | Bree et al. | |
| 5,604,952 | A | * | 2/1997 | Zeleznick | 15/167.1 |
| 5,622,195 | A | | 4/1997 | Lee | |
| 5,630,244 | A | | 5/1997 | Chang | |
| 5,630,505 | A | | 5/1997 | Garcia | |
| 5,651,158 | A | * | 7/1997 | Halm | 15/167.1 |
| 5,673,452 | A | * | 10/1997 | Chang et al. | 15/167.1 |
| 5,778,478 | A | | 7/1998 | Coleman | |
| 5,850,659 | A | * | 12/1998 | Butler et al. | 15/167.1 |
| 5,864,915 | A | * | 2/1999 | Ra | 15/167.1 |
| 6,276,020 | B1 | * | 8/2001 | Leversby et al. | 15/167.1 |
| 6,295,686 | B1 | | 10/2001 | Phillips | |
| 6,298,516 | B1 | * | 10/2001 | Beals et al. | 15/143.1 |
| 6,408,473 | B1 | * | 6/2002 | Kessler | 15/104.94 |
| 6,546,583 | B1 | | 4/2003 | Rohrig | |
| 6,668,416 | B1 | | 12/2003 | Georgi et al. | |
| 6,895,624 | B2 | * | 5/2005 | Fischer et al. | 15/22.1 |
| 6,996,870 | B2 | * | 2/2006 | Hohlbein | 15/110 |
| 7,418,759 | B2 | * | 9/2008 | Huber et al. | 15/167.1 |
| 2003/0208870 | A1 | | 11/2003 | Jimenez | |

* cited by examiner

Fig. 1




Fig. 2




Fig. 3




Fig. 4




Fig. 5




Fig. 6




Fig. 7



Fig. 8




Fig. 9




Fig. 10




Fig. 11



Fig. 12


100
132

Fig. 13


200
MOLD HEAD
202
INSERT HEAD INTO ELONGATED BODY MOLD
204
MOLD ELONGATED BODY ONTO HEAD
206
ATTACH BRISTLES TO HEAD
208

# TOOTHBRUSH AND METHODS OF MAKING AND USING SAME

## CROSS-REFERENCE TO RELATED APPLICATION

This application is a continuation-in-part of prior patent application Ser. No. 10/920,822, filed Aug. 18, 2004, now U.S. Pat. No. 7,334,286.

## FIELD OF THE INVENTION

The present invention relates in general to a toothbrush and methods of making and using it. It more particularly relates to such a toothbrush, which is compact in size and may be safely used by prison or other inmates, and a method of making same.

## BACKGROUND ART

There is no admission that the background art described in this section legally constitutes prior art.

Prison and other detention systems monitor devices permitted to be used by inmates to prevent the use of otherwise safe device as a weapon. For example, conventional toothbrushes are not permitted to be used by many prison systems because they may be fashioned into a pointed shaft or rod or otherwise used as a shank for a sharp object such as a razor blade, which could be used to endanger other inmates or themselves, as well as security personnel.

In an attempt to provide a safe alternative toothbrush for use by inmates for dental hygiene purposes, a toothbrush is currently being used which includes a brush head and a very short handle. The handle is so short that it must be grasped by only the thumb and forefinger of the user. However, such a toothbrush is awkward to use. The fingers of the user may be required to enter the mouth to reach all of the teeth. Such a difficult to use toothbrush may result in inadequate teeth cleaning, and be awkward and uncomfortable to use. Such ineffectual cleaning procedures may cause, or at the least contribute to, poor dental hygiene, thereby leading to costly dental procedures in some instances.

## BRIEF DESCRIPTION OF THE DRAWINGS

The features of this invention and the manner of attaining them will become apparent, and the invention itself will be best understood by reference to the following description of certain embodiments of the invention taken in conjunction with the accompanying drawings, wherein:

FIG. **1** is a plan view of the underside of a toothbrush, which is constructed according to an embodiment of the invention;

FIG. **2** is a front end view of the toothbrush of FIG. **1**;

FIG. **3** is a rear end view of the toothbrush of FIG. **1**;

FIG. **4** is a side end view of the toothbrush of FIG. **1**;

FIG. **5** is a plan view of the top side of the toothbrush of FIG. **1**;

FIGS. **6** and **7** are reduced scale views similar to FIG. **4**, illustrating it in the process of being used; and

FIG. **8** is a pictorial view of a toothbrush which is constructed according to another embodiment of the invention;

FIG. **9**. is a side partial sectional view of the toothbrush of FIG. **8** taken substantially on through line **9-9** thereof;

FIG. **10** is a top plan view of the toothbrush of FIG. **8**;

FIG. **11** is an enlarged view of the circled portion of the toothbrush of FIG. **9**;



FIG. **12** is a side view similar to FIG. **9**, illustrating it in the process of being used; and

FIG. **13** is a flow chart diagram of a method of making the toothbrush of FIG. **8**.

## DETAILED DESCRIPTION OF CERTAIN EMBODIMENTS OF THE INVENTION

Certain embodiments of the present invention will now be described more fully hereinafter with reference to the accompanying drawings, in which some, but not all, embodiments of the invention are shown. Indeed, these embodiments of the invention may be in many different forms and thus the invention should not be construed as limited to the embodiments set forth herein; rather, these embodiments are provided as illustrative examples only so that this disclosure will satisfy applicable legal requirements. Like numbers refer to like elements throughout.

It will be readily understood that the components of the embodiments as generally described and illustrated in the drawings herein, could be arranged and designed in a wide variety of different configurations. Thus, the following more detailed description of the embodiments of the system, components and method of the present invention, as represented in the drawings, is not intended to limit the scope of the invention, as claimed, but is merely representative of the embodiment of the invention.

The disclosed embodiments relate to a toothbrush and methods of making and using it, wherein an elongated body has a bristle brush head portion and a handle portion. The body is composed of flexible material so that the handle portion can be grasped in the hand of the user, and the user can flex the elongated body into a substantially rigid position for teeth brushing purposes.

According to other embodiments, the length of the body is up to about 4.5 inches.

According to still other embodiments of the invention, the material of the body may be composed of an extrudable elastomer selected from the group consisting of silicone, neoprene, EPDM, nitrile, fluoroelastomers, natural rubber, styrene-butadiene rubber, thermoplastic elastomers, polyvinyl alcohol, PMMA, polyamide, polyester terephthalate, polycarbonate, polyetherimide, polyethylene (LDPE, HDPE, LLDPE, and blends), polypropylene and copolymers, polysulfone, polyvinyl chloride, viton, PUNA nitrile, carboxylated nitrile, polysulfides, alpha olefin elastomers, conjugated diene elastomers, hydrogenated diene elastomers, ethylene carboxylate, ethylene-propylene-diene elastomers, functionalized ethylene-vinyl acetate, SB-diblock copolymers, SBS and SIBS-triblock copolymers, and acrylic rubber.

According to further embodiments of the invention, there is provided a method of using a toothbrush by grasping a handle portion in the hand of the user, and pressing on a portion of the elongated body of the toothbrush with a digit of the user to flex the elongated body into a substantially rigid flexed position. The teeth may then be brushed for cleaning purposes. According to the disclosed embodiments, the pressing on the body may include moving the digit of the user into contact with a digit engageable portion of the body, and the flexed position may include the brush head portion of the toothbrush disposed at an angle of about 45 degrees relative to the handle portion.

According to still further embodiments of the invention, there is provided a method of making a toothbrush by molding a head of a first material, inserting the head into an elongated body mold, molding an elongated body having a head portion and a handle portion of a second material onto

the head, and inserting bristles into the head. According to the disclosed embodiments, the first material is more rigid than the second material.

According to yet further embodiments of the invention, there is provided another method of making a toothbrush by molding a head having at least two index pins, inserting the head into an elongated body mold, aligning the head within the elongated body mold using the index pins, molding an elongated body having a head portion and a handle portion onto the head, and inserting bristles into the head.

According to other embodiments of the invention, there is provided a toothbrush having an elongated body being composed of a first material and having a head portion and a handle portion, a head composed of a second material and disposed in the head portion of the elongated body, and a plurality of bristles extending from the head forming a bristle brush. According to the disclosed embodiments, the first material is more rigid than the second material.

Referring now to the drawings, and more particularly to FIGS. **1**, **2**, **3**, **4**, and **5** thereof, there is shown a toothbrush **10**, which may be constructed in accordance with an embodiment of the invention. The toothbrush **10** includes an elongated body **12** having a bristle brush head portion **14** having a bristle brush **15** extending therefrom. The elongated body **12** includes a handle portion **16** and a narrowed intermediate portion **18** integrally connecting the head portion **14** and the handle portion **16**.

A digit engageable irregular surface **20** on the upper surface of the intermediate portion **18** is adapted to be engaged by a digit of the user to help flex it into a substantially rigid position for brushing the teeth. The digit engageable irregular surface **20** includes a rigid surface **21** formed of projections or ridges such as the ridges **23** and **25** to facilitate grasping the body **12** with a digit of the user. While it is shown and described that the thumb of the user may engage the surface **20**, it is contemplated that a finger such as an index finger may also be preferredly used to press on the surface **20**, instead of the thumb.

As best seen in FIG. **4**, the body **12** has a slightly curved side edge or curved aspect **27** between the head portion **14** and the handle portion **16**, to help facilitate the flexing of the body **12** by the hand of the user. An irregular surface **29** on the underside of the handle portion **16** includes a group of projections or ridges such as ridges **30** and **31**. Similarly, an irregular surface **32** on the top side of the handle portion **16** includes projections or ridges such as ridges **34** and **36**. Thus, the irregular surfaces on the handle portion **16** facilitate the grasping of the handle portion when the hands are wet to help grasp the toothbrush **10** during use.

According to an embodiment of the invention, as shown in FIGS. **6** and **7**, there is shown the placement of the combined thumb and index finger, or other convenient manner of holding the toothbrush **10** in the hand of the user to perform a tooth brushing operation. The top half or head portion **14** of the toothbrush **10** is positioned by flexing the body **12** to cause the head portion **14** to assume a position in about a 45 degree angle relative to the handle portion **16** to facilitate the cleaning process. The use of the toothbrush **10** may require the combined use of an index finger and a thumb of the same hand. The head portion **14** and remaining portion, such as the intermediate portion **18**, may be flexible or otherwise deformable or breakable or other, to prevent or limit the possibility of using or converting the toothbrush **10** to a shank/stabbing weapon device in an environment requiring safety such as prisons—and also to contribute to less abrasion and trauma to the teeth and gums while brushing.



In use, the digit such as the thumb, index finger or other may act as a guide to place the brush head portion **14** in an approximate 45 degree angle relative to the handle portion **16**, to steady the head portion **14** and the handle portion **16**, to help direct the head portion **14** into the mouth and place the head portion **14** into engagement with the teeth, and to steady the flexible intermediate portion **18** and head portion **14**, while using the brush **15** in the act of brushing the teeth.

The placement of the digit such as the thumb, index finger or other on or near the ridges of the irregular surface **20** helps to alleviate slippage if the body **12** becomes wet. The ridges such as ridge **23** and **25** may be increased or decreased in number and arrangement or the irregular area expanded in area or length.

For the purposes of safety (i.e. prison market) the length of the body **12** of the toothbrush **10** should be up to approximately 4½ inches in length. More preferably, the length of the body **12** is between about 3.0 inches and 4.5 inches. Still more preferably, the length of the body **12** is between about 3.5 inches and about 4.5 inches. The most preferred length of the body **12** is about 4.5 inches.

The head portion **14** may have a slightly wider head portion **14** as shown in FIG. **1**. Also, the intermediate portion **18** may vary in width, and may be wider than the portion **18** shown in FIG. **1**. Additionally, the hardness of the material of the body **12** may vary, depending on the degree of safety desired and the selection of the material. A harder material may affect the need for more pressure exertion by the digit of the user. The preferred hardness is a durometer hardness of between about 75 and about 95 on the Shore A scale.

Referring now to FIGS. **8**, **9**, **10**, **11** and **12** thereof, there is shown a toothbrush **100**, which may be constructed in accordance with another embodiment of the invention. The toothbrush **100** may include an elongated body **102** and a head **104** having a bristle brush **106** extending therefrom. The elongated body **102** may be made of a flexible material as described previously. The head **104** may be made of a more rigid material to facilitate attachment of the bristle brush **106**.

The head **104** may include a body **108** having a top side **111** and a bottom side **113**. The top side **111** of the head **104** may contain a plurality of holes **115** for the insertion of a plurality of bristle groups **117** containing a plurality of bristles to form the bristle brush **106**. The bottom side **113** of the head **104** may include a pair of index pins **119** and **122**. The index pins **119** and **122** may be integrally connected to the head **104** and may extend away from the bottom side **113** of the head **104**. The head **104** may be no greater in size than necessary to hold the bristle brush **106** to prevent fashioning or using the head **104** as a weapon. The material of the head **104** may be composed of an extrudable and/or injectable plastic.

The elongated body **102** may include a head portion **124**, a handle portion **126**, and a narrowed intermediate portion **128** integrally connecting the head portion **124** and the handle portion **126**. The head portion **124** of the elongated body **102** may include a side wall **131** and a back wall **133** substantially defining a cavity **135** in the head portion **124** in which the head **104** may be disposed. The back wall **133** of the head portion **124** may include a pair of passageways **137** and **139** for index pins **119** and **122**, respectively. The head portion **124** may significantly surround the head **104** to further prevent fashioning or using the head **104** as a weapon.

A digit engageable irregular surface **142** on the upper surface of the intermediate portion **128** may be adapted to be engaged by a digit of the user to help flex it into a substantially rigid position for brushing the teeth. The digit engageable irregular surface **142** may be formed of projections or ridges

such as the projections **144** and **146** to facilitate grasping the body **102** with a digit of the user.

A pocket **132** or other suitable device may be included on the handle portion **126** of the elongated body **102** enclosing the irregular surface **142**. The pocket **132** may guide and/or keep an index or other finger of the user in place to support the toothbrush during brushing as shown in FIG. **12** prior to flexing the toothbrush. By applying a force with the index finger, the toothbrush may be bent as shown in FIG. **7**. The pocket **132** may be made of the same or similar material as the elongated body **102** to facilitate keeping the finger in place to flex the handle portion **126** and/or to guide the head portion **124** for brushing. The pocket **132** may be molded to the handle portion **126** or attached to the handle portion **126** by another suitable means.

As best seen in FIG. **9**, the body **102** may have a slightly curved side edge or curved aspect **148** between the head portion **124** and the handle portion **126**, to help facilitate the flexing of the body **102** by the hand of the user. An irregular surface **151** on the underside of the handle portion **126** may include a group of projections or ridges such as projections **153** and **155**. Similarly, an irregular surface **157** (FIG. **10**) on the top side of the handle portion **126** may include projections or ridges such as projections **159** and **162**. Thus, the irregular surfaces on the handle portion **126** may facilitate the grasping of the handle portion when the hands are wet to help grasp the toothbrush **100** during use and may also be utilized as a tongue scrubber.

The projections on any of the irregular surfaces, such as projections **144** and **146** on irregular surface **142**, may be increased or decreased in number and arrangement or the area of the irregular surface may be expanded in area or length.

The portions of the elongated body **102**, such as the intermediate portion **128**, may be flexible or otherwise deformable or breakable or other, to prevent or limit the possibility of using or converting the toothbrush **100** to a shank/stabbing weapon device in an environment requiring safety such as prisons—and also to contribute to less abrasion and trauma to the teeth and gums while brushing.

For the purposes of safety (i.e. prison market) the length of the body **102** of the toothbrush **100** should be up to approximately 4½ inches in length. More preferably, the length of the body **102** is between about 3.0 inches and 4.5 inches. Still more preferably, the length of the body **102** is between about 3.5 inches and about 4.5 inches. The most preferred length of the body **102** is about 4.5 inches.

The head portion **124** may vary in width, and may be a slightly wider than the head portion **124** as shown in FIG. **10**. Also, the intermediate portion **128** may vary in width, and may be wider than the portion **128** shown in FIG. **10**. Additionally, the hardness of the material of the body **102** may vary, depending on the degree of safety desired and the selection of the material. A harder material may affect the need for more pressure exertion by the digit of the user. The preferred hardness of the material of the body **102** is a durometer hardness of between about 75 and about 95 on the Shore A scale.

The toothbrush **100** may be used in the same manner and way as described above regarding the toothbrush **10**.

Referring now to FIG. **13**, a method of making the toothbrush **100** is shown and generally referenced as **200**. The first step **202** of method **200** may be to mold the head **104**. The head **104** may be molded of a rigid material to include a body **108** having a plurality of holes **115** on the top side **111** and index pins **119** and **121** extending from the bottom side **113**.



The head **104** may be no greater in size than necessary to hold the bristle brush **106** to prevent fashioning or using the head **104** as a weapon.

The head **104** may be inserted into the elongated body mold in the next step **204** using the index pins **119** and **121** to facilitate alignment of the head **104** within the mold. The index pins **119** and **121** may act as guides to keep the head **104** in place to substantially reduce waste and rejection of the molded toothbrushes.

In step **206**, the elongated body **102** may be molded onto the head **104** using a flexible material. The head portion **124** of the elongated body may encase all but the top side **111** of the head **104** with the index pins **119** and **121** extending to the exterior surface of the back wall **133** of the head portion to further prevent fashioning or using the head **104** as a weapon. A pocket **132** may also be molded to the elongated body **102** for insertion of a finger by the user to facilitate use of the toothbrush. Lastly, a plurality of bristle groups **117** may be inserted into the holes **115** of the head to create the bristle brush **106** in step **208**.

It should be understood that these toothbrushes may be used for a variety of purposes. It may be used for cleaning the teeth of animals such as pets. These toothbrushes may be used in travel kits due to its compact size. For such applications, a harder material may be used, and result in less reliance on the digit pressing on the digit engageable irregular surface to guide the head portion and the length of the bristle brush may vary. For example, a longer handle portion and less flexible material may be employed for a larger pet.

The more flexible the materials, the less safety risk (for the prison environment). The hardness of the material directly affects the flexibility. Different hardness of the material or different materials used, may tailor these toothbrushes to meet a range of safety concerns needed from maximum security prisons (the highest) down to minimum security prisons.

The bristles may be the same type or quality as are found in conventional toothbrushes, and may be soft, medium or firm. Oval shaped bristles may be employed, but other shapes such as square may be employed as well.

These toothbrushes when used in correctional facilities may lessen the risk to inmates and correctional officers from an inmate using the toothbrush or modifying it as a slashing weapon device. Inmates can fashion such a weapon from a conventional hard plastic toothbrush by cutting a notch in the head or bottom of the handle to insert a razor blade, and either melt the material around the razor blade (or glass or similar sharp material) to hold the sharp object in place. After the melted area cools, such a device becomes a dangerous weapon for the use described. The embodiment of the invention may substantially lessen or eliminate the fashioning of such a device, because the material may not have the strength and rigidity of a conventional stiff handled toothbrush.

These toothbrushes may be constructed of a clear material, in part or all. The correctional market desires products that are either constructed of clear material to lessen the possibility of contraband being hidden. For the retail or pet markets, solid colored material may be employed.

Many conventional toothbrushes are designed with a lengthy handle, usually with some ergonomic design, but usually with an overall design to condition the user to grasp the handle with the entire hand and bring the entire stiff handled device to bear force and pressure on the teeth and gums. Such operation may cause pain and excessive wear and abrasion to teeth and gums.

The disclosed embodiment invention eliminates or lessens much of those negative characteristics. The user of the flexible handled toothbrush can use much less force and pressure

on teeth and gums with a small amount of pressure using the digit such as the thumb or index finger, to guide the head portion. Such construction tends to eliminate the use of the entire hand to manipulate a long, stiff conventional handle that is designed to be used with the entire hand and requiring ergonomic design to lessen the negative features of having to grasp with the entire hand a handle and twisting the wrist. A conventional long handled toothbrush requires twisting or manipulation of the hand and wrist. Whereas, these toothbrushes use more manipulation of the digits and less wrist action to place the flexible head portion onto the teeth to be cleaned.

The elongated body may have added ridges positioned further up the inside of the handle, about an inch from the thumb area to prevent possible slippage in case the user places their thumb outside the intended area.

The different materials to construct the handle will also have some features to lessen slippage when the device is wet. Conventional toothbrushes use similar materials, such as the tactile feel of rubber.

There are areas left for product identification on the underside of the toothbrush as well as the top area of the head, for incorporating into the mold or tooling for molding indicia (not shown) thereon.

Although these toothbrushes are currently preferred to accommodate the prison environment, the pet market could use a larger size body to provide a longer handle. A possible application could also include the retail market and the travel kit market (space requirements for travel kits necessitates downsized articles—i.e., a short handle toothbrush) or a device with a handle extension.

The head portion may be a separate part and molded to the shaft during the manufacturing process. The bristles (number of cavities, and tufts or strands per cavity) should be similar to any conventional toothbrush. The head portion may vary in size, and may be sized to the mouth of an average user. Also, there may be different angles for the bristles. The bristles may be inserted after the material of the body partially or completely cools.

There may be different methods being used to insert the bristles. It should be noted that only a portion of the body may be flexible or otherwise deformable.

A variety of material hardness of the body may be employed to adjust the flexibility thereof to adjust the softness portion to limit twisting thereof relative to the handle portion.

Although the invention has been described with reference to the above examples, it will be understood that many modifications and variations are contemplated within the true spirit and scope of the embodiments of the invention as disclosed herein. Many modifications and other embodiments of the invention set forth herein will come to mind to one skilled in the art to which the invention pertains having the benefit of the teachings presented in the foregoing descriptions and the associated drawings. Therefore, it is to be understood that the invention shall not be limited to the specific embodiments disclosed and that modifications and other embodiments are intended and contemplated to be included within the scope of the appended claims. Although specific terms are employed herein, they are used in a generic and descriptive sense only and not for purposes of limitation.

What is claimed is:

**1**. A toothbrush, comprising:

an elongated body being flexible throughout the elongated body and comprising a first material and having a head portion and a handle portion;



a head comprising a second material, wherein the head is disposed in and molded to the head portion of the elongated body; and

a plurality of bristles extending from the head forming a bristle brush,

wherein the first material is less rigid than the second material.

**2**. The toothbrush of claim **1**, wherein the head includes at least two index pins parallel to the plurality of bristles.

**3**. The toothbrush of claim **1**, wherein the head includes a plurality of holes for insertion of the bristles, wherein the bristles are inserted in a bristle group into the holes of the head.

**4**. The toothbrush of claim **1**, wherein the second material is durable and has a durometer hardness of between about 75 and about 95 on the Shore A scale.

**5**. The toothbrush of claim **1**, wherein the second material is one selected from the group consisting of polyurethane, silicone, neoprene, EPDM, nitrile, fluoroelastomers, natural rubber, styrene-butadiene rubber, thermoplastic elastomers, polyvinyl alcohol, PMMA, polyamide, polyester terephthalate, polycarbonate, polyetherimide, polyethylene (LDPE, HDPE, LLDPE, and blends), polypropylene and copolymers, polysulfone, polyvinyl chloride, viton, PUNA nitrile, carboxylated nitrile, polysulfides, alpha olefin elastomers, conjugated diene elastomers, hydrogenated diene elastomers, ethylene carboxylate, ethylene-propylene-diene elastomers, functionalized ethylene-vinyl acetate, SB-diblock copolymers, SBS and SIBS-triblock copolymers, and acrylic rubber.

**6**. The toothbrush of claim **1**, wherein the length of the elongated body is between about 3.0 inches and about 4.5 inches.

**7**. The toothbrush of claim **1**, wherein the handle portion is wider than the head portion and has a narrowed intermediate portion therebetween;

wherein the handle portion has a bulbous end in a top aspect, and

wherein the bulbous end comprises a group of protrusions to facilitate grasping by a user.

**8**. The toothbrush of claim **7**, wherein the intermediate portion includes a finger engageable irregular surface comprising a plurality of protrusions.

**9**. The toothbrush of claim **1**, wherein the elongated body has a curved edge extending between the head portion and the handle portion.

**10**. The toothbrush of claim **1**, further including a pocket attached to the head portion of the elongated handle for securing a user's finger to the toothbrush.

**11**. A toothbrush, comprising:

an elongated body being flexible throughout the elongated body comprising a first material and having a head portion and a handle portion;

a head comprising a second material, wherein the head is disposed in and molded to the head portion of the elongated body;

a plurality of bristles extending from the head forming a bristle brush, the head further comprising two index pins,

wherein the first material substantially encases the second material at the head portion.

**12**. The toothbrush of claim **11**, wherein the head includes a plurality of holes for insertion of the bristles, wherein the bristles are inserted in a bristle group into the holes of the head.

**13**. The toothbrush of claim **11**, wherein the second material is durable and has a durometer hardness of between about 75 and about 95 on the Shore A scale.

**14**. The toothbrush of claim **11**, wherein the second material is one selected from the group consisting of polyurethane, silicone, neoprene, EPDM, nitrile, fluoroelastomers, natural rubber, styrene-butadiene rubber, thermoplastic elastomers, polyvinyl alcohol, PMMA, polyamide, polyester terephthalate, polycarbonate, polyetherimide, polyethylene (LDPE, HDPE, LLDPE, and blends), polypropylene and copolymers, polysulfone, polyvinyl chloride, viton, PUNA nitrile, carboxylated nitrile, polysulfides, alpha olefin elastomers, conjugated diene elastomers, hydrogenated diene elastomers, ethylene carboxylate, ethylene-propylene-diene elastomers, functionalized ethylene-vinyl acetate, SB-diblock copolymers, SBS and SIBS-triblock copolymers, and acrylic rubber.

**15**. The toothbrush of claim **11**, wherein the length of the elongated body is between about 3.0 inches and about 4.5 inches.

**16**. The toothbrush of claim **11**, wherein the elongated body has a curved edge extending between the head portion and the handle portion.

**17**. The toothbrush of claim **11**, further including a pocket attached to the head portion of the elongated handle for securing a user's finger to the toothbrush.



**18**. A toothbrush, comprising:

an elongated body comprising a first material and having a head portion and a handle portion;

a head comprising a second material and disposed in and molded to the head portion of the elongated body, wherein the handle portion is wider than the head portion and has a narrowed intermediate portion therebetween, and further wherein the first material is different from the second material such that the second material comprising the head is more rigid than the first material comprising the elongated body; and

wherein the handle portion has a bulbous end in a top aspect and is generally a tapered rectangle in a side aspect, the bulbous end together with the head providing generally a barbell shape in the top aspect.

**19**. The toothbrush of claim **18**, wherein the intermediate portion includes a finger engageable irregular surface comprising a plurality of protrusions.

**20**. The toothbrush of claim **18**, further including a pocket attached to the head portion of the elongated handle for securing a user's finger to the toothbrush.

* * * * *

# EXHIBIT B

## Case No. 2:17-CV-01825 - TSZ

**(Representative Claim Chart)**

**EXHIBIT B**

**Maxill v. Loops, Case No. 2:17-CV-01825 - TSZ**

**Claim Chart Comparing Claims of U.S. Patent 8,448,285 to Accused Products**

| Claim | Accused Products (SuperMaxx Product) |
|---|---|
| 1. A toothbrush, comprising: | |
| an elongated body being flexible throughout the elongated body and comprising a first material and having a head portion and a handle portion; |  |
| a head comprising a second material, wherein the head is disposed in and molded to the head portion of the elongated body; |   |
| and a plurality of bristles extending from the head forming a bristle brush, wherein the first material is less rigid than the second material. |  |
| | |
| 2. The toothbrush of claim 1, wherein the head includes at least two index pins parallel to the plurality of bristles. |  |
| | |
| 3. The toothbrush of claim 1, wherein the head includes a plurality of holes for insertion of the bristles, wherein the bristles are inserted in a bristle group into the holes of the head. |  |
| | |
| 6. The toothbrush of claim 1, wherein the length of the elongated body is between about 3.0 inches and about 4.5 inches. | The Accused Products are about 4.25 inches long. |
| | |

| **Claim** | **Accused Products (SuperMaxx Product)** |
|---|---|
| 9. The toothbrush of claim 1, wherein the elongated body has a curved edge extending between the head portion and the handle portion. |  |
| | |
| 11. A toothbrush, comprising: | |
| an elongated body being flexible throughout the elongated body comprising a first material and having a head portion and a handle portion; |  |
| a head comprising a second material, wherein the head is disposed in and molded to the head portion of the elongated body; |  |
| a plurality of bristles extending from the head forming a bristle brush, the head further comprising two index pins, wherein the first material substantially encases the second material at the head portion. | See above. |
| | |
| 12. The toothbrush of claim 11, wherein the head includes a plurality of holes for insertion of the bristles, wherein the bristles are inserted in a bristle group into the holes of the head. |  |
| | |
| 15. The toothbrush of claim 11, wherein the length of the elongated body is between about 3.0 inches and about 4.5 inches. | The Accused Products are about 4.25 inches long. |
| | |
| 16. The toothbrush of claim 11, wherein the elongated body has a curved edge extending between the head portion and the handle portion. |  |
| | |

# EXHIBIT C

Case No. 2:17cv08125 - TSZ

U.S. Patent 10,344, 940

US010334940B2

(12) **United States Patent**
**Kayser**

(10) **Patent No.: US 10,334,940 B2**
(45) **Date of Patent: *Jul. 2, 2019**

(54) **COMPOSITE HEAD TOOTHBRUSH HAVING SAFETY FEATURES**

(71) Applicant: **Steven L. Kayser**, San Diego, CA (US)

(72) Inventor: **Steven L. Kayser**, San Diego, CA (US)

(73) Assignee: **Loops LLC**, Ferndale, WA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **15/854,097**

(22) Filed: **Dec. 26, 2017**

(65) **Prior Publication Data**

US 2018/0125219 A1 May 10, 2018

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 14/099,637, filed on Dec. 6, 2013, now abandoned, which is a continuation-in-part of application No. 11/653,153, filed on Jan. 12, 2007, now Pat. No. 9,066,583, which is a continuation-in-part of application No. 11/563,671, filed on Nov. 27, 2006, now Pat. No. 8,448,285.

(51) **Int. Cl.**

| | |
|---|---|
| ***A46B 5/02*** | (2006.01) |
| ***A46B 9/04*** | (2006.01) |
| ***A46B 5/00*** | (2006.01) |
| ***A46B 15/00*** | (2006.01) |

(52) **U.S. Cl.**

CPC ............. ***A46B 5/0075*** (2013.01); ***A46B 5/02*** (2013.01); ***A46B 9/04*** (2013.01); ***A46B 15/0081*** (2013.01); *A46B 2200/1066* (2013.01)

(58) **Field of Classification Search**

CPC ..... A46B 5/02; A46B 5/0075; A46B 15/0081; A46B 2200/1066; A46B 9/04

See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 1,645,965 | A * | 10/1927 | Neumerkel | A46B 5/04 | 15/167.1 |
| 1,717,125 | A * | 6/1929 | Spitz | A46B 7/04 | 15/176.4 |
| 1,875,476 | A * | 9/1932 | McNally | A46B 7/04 | 15/176.4 |
| 1,908,510 | A | 5/1933 | Dodson | | |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| DE | 36 28 722 | * | 2/1988 |
| DE | 19624962 A1 | | 1/1998 |

(Continued)

*Primary Examiner* — Randall E Chin

(74) *Attorney, Agent, or Firm* — Timothy W. Fitzwilliam

(57) **ABSTRACT**

A composite head safety toothbrush is disclosed. The toothbrush apparatus detailed herein employs a composite head made from a rigid inner polymer material and a softer thermoplastic material surrounding the inner material. The softer material provides safety for prison toothbrush applications as well as elderly and patient care where care givers may brush the teeth of a patient. Innovative pin connectors in the inner toothbrush head assist in the composite formation. The toothbrush solution herein further importantly provides for a toothbrush having a flexible handle.

**6 Claims, 3 Drawing Sheets**






(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,945,559 | A | 2/1934 | McNally |
| 5,291,878 | A | 3/1994 | Lombardo et al. |
| 5,630,244 | A | 5/1997 | Chang |
| 5,864,915 | A | 2/1999 | Ra |
| 6,276,020 | B1 | 8/2001 | Leversby et al. |
| 6,295,686 | B1 | 10/2001 | Phillips |
| 6,298,516 | B1 | 10/2001 | Beals et al. |
| 6,546,583 | B1 | 4/2003 | Rohrig |
| 6,668,416 | B1 | 12/2003 | Georgi et al. |
| 7,334,286 | B2 | 2/2008 | Kayser |
| 8,448,285 | B2 * | 5/2013 | Kayser ................. A46B 5/0075 15/143.1 |
| 2003/0208870 | A1 | 11/2003 | Jimenez |
| 2012/0324664 | A1 | 12/2012 | Carpenter |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0336641 | 11/1989 |
| WO | 0015077 | 3/2000 |

* cited by examiner




FIG. 1




FIG. 2




FIG. 3




FIG. 4




FIG. 5




FIG. 6

# COMPOSITE HEAD TOOTHBRUSH HAVING SAFETY FEATURES

## PRIORITY CLAIM

This patent application is a continuation-in-part, and therefore contains subject matter claiming benefit of the priority date of pending U.S. patent application Ser. No. 14/099,637 filed on Dec. 6, 2013 and entitled METHOD FOR MAKING SAFETY TOOTHBRUSHES now abandoned, which in turn is a continuation-in-part of U.S. patent application Ser. No. 11/653,153 filed on Jan. 12, 2007 and entitled, PACKAGED TOOTHBRUSH AND TOOTHBRUSH CONTAINER AND METHODS OF MAKING SAME, now U.S. Pat. No. 9,066,583; which is further a continuation-in-part of, and claims benefit of the priority date of U.S. patent application Ser. No. 11/563,671, now U.S. Pat. No. 8,448,285 filed on Nov. 27, 2006 and entitled TOOTHBRUSH AND METHODS OF MAKING AND USING SAME, accordingly, the entire contents of these patent applications are hereby expressly incorporated by reference.

## BACKGROUND OF THE INVENTION

### Field of the Invention

The present invention pertains generally to toothbrush devices. More specifically, the invention relates to a composite head toothbrush with safety features particularly useful for prisons, hospitals and patient/elderly care.

### Description of the Prior Art

Prisons and other detention systems restrict certain hygiene items used by inmates to prevent the use of an otherwise safe device as a weapon. For example, conventional toothbrushes are not permitted to be used by many prison systems because they may be fashioned into a pointed shaft or rod or otherwise known as a shank, which could be used to endanger other inmates or themselves, as well as security personnel. Psychiatric and other mental health systems likewise require toothbrushes that cannot cause self-injury or harm to care givers or security personnel.

A previous attempt to provide a safe alternative toothbrush for use by inmates was a toothbrush simply having a brush head and a very short handle. However, such handle is so short that it must be grasped by only the thumb and forefinger of the user. Hence, this toothbrush is awkward to use. The fingers of the user may be required to enter the mouth to reach all of the teeth. Such a difficult to use toothbrush may only provide marginal teeth cleaning and be uncomfortable to use. Further ineffectual cleaning procedures may cause, or at the least contribute to, poor dental hygiene, thereby leading to costly dental procedures in some instances.

Toothbrushes having a flexible handle, therefore deterring inmates' ability to fashion into a shank have further been heretofore known. One such example was proposed by inventor Phillips, entitled "Flexible Toothbrush," U.S. Pat. No. 6,295,686. This particular design has a handle portion, reference character sixteen, that is flexible. The handle portion is further coupled to a neck portion, reference character fourteen. The material used in the toothbrush design additionally comprises 50% thermoplastic rubber and 50% polypropylene. As compared to Philips however, the present invention incorporates added design benefits that improve wear characteristics and facilitate use.

Also of concern in the technical field is a bristle retention requirement. Particularly, the bristles must remain secured in place for reasonable longevity. This is of particular concern for prison toothbrushes because bristle retention is very poor when configured to flexible material. Accordingly, present inventor has experimented with composite toothbrush head designs. A related example is provided by Leversby et al., entitled "Toothbrush Structure," U.S. Pat. No. 6,276,020. Leversby and his co-inventors describe a toothbrush design with two materials included in the molding process to generally improve strength of the toothbrush and provide a non-slip surface for grasping. There remains a need, however, for a toothbrush head being resilient for strength and bristle retention but however having an outer softer material.

## BRIEF SUMMARY OF THE INVENTION

The present invention specifically addresses and alleviates the above mentioned deficiencies associated with the prior art. More particularly, the present invention in a one aspect, is directed to a toothbrush having a composite head, the composite head comprising: a rigid inner core having a plurality of bristle holes for retention and holding a plurality of toothbrush bristles, the rigid inner core made from a 1st material; and a pliable flexible material substantially or entirely surrounding the rigid inner core on a left and a right side in the bottom plan view underside aspect, the pliable flexible material being made from a 2nd material.

Still further the invention in this aspect may be characterized wherein the composite head further comprises a tip of the rigid inner core being covered with the pliable flexible material; and an end of the rigid inner core opposite the tip further having the pliable flexible material adjacent thereto. Also further the composite head has an opposite side of the rigid inner core, the opposite side opposing a side having the plurality of bristle holes, the opposite side substantially covered by pliable flexible material. And further the composite head has a pair of pin connectors extending from the opposite side of the toothbrush head, the toothbrush head thereby being substantially encased by the pliable flexible material with the exception of the pin connectors and the side having the plurality of bristles not being fully encased in the pliable flexible material.

Yet further, the invention in this aspect may be characterized wherein the pair of pin connectors are offset diagonally with respect to a longitudinal axis of the toothbrush, the longitudinal axis being equidistance to each of the pair of pin connectors. Another feature of the invention is that the composite head toothbrush has a flexible handle at least partially made from the 2nd material, the pliable material, the toothbrush further thereby being a safety toothbrush. Still further, the flexible handle further includes an enlarged curvilinear flat rear end portion wherein further the toothbrush is able to be flexed into substantially a "L" or "C" shape.

These, as well as other advantages of the present invention will be more apparent from the following description and drawings. It is understood that changes in the specific structure shown and described may be made within the scope of the claims, without departing from the spirit of the invention, such as a variety of positions for pin placement as described herein.

The invention can be better visualized by turning now to the following drawings wherein like elements are referenced by like numerals.

## BRIEF DESCRIPTION OF THE DRAWINGS

The novel features of this invention, as well as the invention itself, both as to its structure and its operation, will be best understood from the accompanying drawings, taken in conjunction with the accompanying description, in which similar reference characters refer to similar parts, and in which:

FIG. **1** is a perspective view of toothbrush embodiment made from a preferred method herein;

FIG. **2** is a profile view with a partial sectional view thereof taken along line **2-2** in FIG. **1** and in FIG. **3**;

FIG. **3** is a top plan view of the toothbrush embodiment;

FIG. **4** is an enlarged view of an area circumscribed by line **4** in FIG. **2**;

FIG. **5** is a bottom plan view of the toothbrush embodiment; and

FIG. **6** is illustrative of a preferred position of a toothbrush.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

Various inventive features are described below that can each be used independently of one another or in combination with other features.

Initially, with reference to FIG. **1**, a flexible handle toothbrush **10** is shown that particularly answers a need in the prison, hospital or institutional applications. As shown, the toothbrush **10** has an inner toothbrush head **11** made with a first material. The first material is ideally comprised of a rigid polymer material, therefore providing structural integrity to the toothbrush **10** head **20** allowing for attachment of bristles **14**, via the bristle holes **13**, in the manufacturing process. Further, an outer toothbrush head **12** is manufactured from extrudable elastomer material, e.g. thermoplastic material, thereby making this material **12** soft and pliable, hence, safer for prison environments or patient care institutions. Additionally as shown, a handle portion **61** is comprised of the same flexible material as the outer toothbrush head **12**.

With regard to FIG. **2**, a profile of the toothbrush **10** is provided with a partial sectional view thereof taken along line **2-2** in FIG. **1** and in FIG. **3**. This together with FIG. **4**, the composite toothbrush head **20** is shown with inner **11** and outer **12** portions having a pair (or more, or at least one) of pins **21**, **22** at the interface thereof. Importantly, two separate single cavity molds are employed and a method step of molding the inner toothbrush head **11** preceding a step of molding the outer toothbrush head **12**. In molding the outer toothbrush head **12**, the inner toothbrush head **11** is inserted inside the outer toothbrush head **12** (plus handle **61**) mold. The outer toothbrush plus handle mold will have a cavity to receive the inner toothbrush head having a plurality of bristle holes drilled thereto. Importantly, the composite toothbrush head **20** is devoid of glue, as additionally detailed herein. Further, the manufacturing of the composite head **20** will employ two single cavity molds.

With regard to FIG. **3**, a top plan view of the toothbrush is shown particularly illustrating placement of the interfacing pins **21**, **22** of the present invention. As stated pin connectors **21**, **22** are employed to strengthen the mating between inner **11** and outer **12** toothbrush head. More specifically, the pins **21**, **22** are offset diagonally and equidistant with respect to a longitudinal axis of the flexible handle toothbrush **10**, as shown. Also, with regard to the pins, they are further employed to maintain the inner head **11** stationary while positioned in the cavity of the outer head (plus handle) mold. Also as contemplated by the present invention, the two or more pins **21**, **22** can be positioned anywhere along the interface between inner **11** and outer **12** heads, as long as the inner head stays stationary in the cavity portion of the outer head **12** mold. FIG. **4** provides an enlarged view of the interface between the inner **11** and outer **12** toothbrush heads.

With regard to FIG. **5**, the composite head **11**, **12** is shown having a rigid inner core **11** that retains and holds a plurality of toothbrush bristles. The composite head rigid inner core **11** is made from a 1st material. Generally, the inner core **11** is partially or wholly surrounded by softer material on various sides **31**, **32**, **33**, **34**, **36**. Initially, the pliable flexible material surrounds the rigid inner core **11** on a left **31** and a right **32** side in the bottom plan view (FIG. **5**) underside aspect; the pliable flexible material is particularly made from a 2nd material forming the composite **11**, **12**. Also notably, the 2nd material is cured around the 1st material to provide a bond devoid of glue due to thermoplastic properties of the 2nd material.

Further with regard to FIG. **5**, a tip **33** of the rigid inner core **11** is covered with the pliable flexible material **12**. The end **34** that transitions to the toothbrush handle **61** has pliable flexible material configured thereto. The end **34** of the rigid inner core is opposite the tip **33**.

With further reference to FIG. **2** and FIG. **3**, an opposite side **36** of the rigid inner core **11** is also substantially covered by pliable flexible material **12**; in a preferred embodiment (FIG. **3**), the opposite side **36** is covered with the exception of the pin connectors **21**, **22** being made from the 1st material. The opposite side **36** opposes a side **35** having the plurality of bristle holes **13**. The pair of pin connectors **21**, **22** extend from the opposite side **36** of the toothbrush inner head **11**. The toothbrush inner head **11** could further be partially, substantially or wholly encased by the pliable flexible material. A notable exception would be the pin connectors **21**, **22** and the side **35** having the plurality of bristles not being fully encased in the pliable flexible material.

With regard to FIG. **6**, the preferred toothbrush has a flexible handle **61** at least partially (or wholly) made from the 2nd material, the toothbrush thereby being a safety toothbrush suitable for prisons, institutions, or the like. As shown, the toothbrush can easily be bent into a shape of an "L," or a "C." More particularly, the flexible handle **61** has an enlarged curvilinear flat rear end portion and being comprised of flexible material thereby permitting the toothbrush to be flexed into substantially a "L" or "C" shape.

Many alterations and modifications may be made by those having ordinary skill in the art without departing from the spirit and scope of the invention. Therefore, it must be understood that the illustrated embodiments have been set forth only for the purposes of example and that it should not be taken as limiting the invention as defined by the following claims. For example, notwithstanding the fact that the elements of a claim are set forth below in a certain combination, it must be expressly understood that the invention includes other combinations of fewer, more or different elements, which are disclosed in above even when not initially claimed in such combinations.

While the particular Composite Head Toothbrush Having Safety Features as herein shown and disclosed in detail is

fully capable of obtaining the objects and providing the advantages herein before stated, it is to be understood that it is merely illustrative of the presently preferred embodiments of the invention and that no limitations are intended to the details of construction or design herein shown other than as described in the appended claims.

Insubstantial changes from the claimed subject matter as viewed by a person with ordinary skill in the art, now known or later devised, are expressly contemplated as being equivalently within the scope of the claims. Therefore, obvious substitutions now or later known to one with ordinary skill in the art are defined to be within the scope of the defined elements.

What is claimed is:

**1**. A toothbrush having a composite head, the composite head comprising:

a rigid polymer inner core having a plurality of bristle holes for retention and holding a plurality of toothbrush bristles, the rigid inner core made from a 1st material;

a pliable flexible material completely surrounding the rigid inner core on a left and a right side in bottom plan view underside aspect, the pliable flexible material being made from a 2nd material; and

a bond at an interface between the rigid inner core and the pliable flexible material surrounding the rigid polymer inner core, wherein further the rigid polymer inner core is molded to the pliable flexible material thereby forming the composite head having the bond.

**2**. The toothbrush having a composite head of claim **1**, the composite head further comprising:

a tip of the rigid polymer inner core being covered with the pliable flexible material;

an end of the rigid polymer inner core opposite the tip further having the pliable flexible material adjacent thereto, the end of the rigid polymer inner core opposite the tip transitioning to a handle of the toothbrush;

an opposite side of the rigid inner core, the opposite side opposing a side having the plurality of bristle holes, the opposite side substantially covered by the pliable flexible material; and

a pair of pin connectors extending from the opposite side of the rigid polymer inner core, the rigid polymer inner core thereby being substantially encased by the pliable



flexible material with an exception of the pin connectors and the side having the plurality of bristles not being fully encased in the pliable flexible material.

**3**. The toothbrush having a composite head of claim **1**, the pliable flexible material further comprising thermoplastic properties and further wherein the bond is devoid of glue due to the thermoplastic properties of the pliable flexible material.

**4**. A toothbrush having a composite head, the composite head comprising:

a rigid polymer inner core having a plurality of bristle holes for retention and holding a plurality of toothbrush bristles, the rigid polymer inner core made from a 1st material;

a pliable flexible material substantially surrounding the rigid polymer inner core on a left and a right side in a bottom plan view underside aspect, the pliable flexible material being made from a 2nd material; and

a flexible handle, the flexible handle at least partially made from the 2nd material, the toothbrush thereby being a safety toothbrush.

**5**. The toothbrush having a composite head of claim **4**, the flexible handle further comprising an enlarged curvilinear flat rear end portion.

**6**. The toothbrush having a composite head of claim **4**, the composite head further comprising:

a tip of the rigid polymer inner core being covered with the pliable flexible material;

an end of the rigid polymer inner core opposite the tip further having the pliable flexible material adjacent thereto, the end of the rigid polymer inner core opposite the tip transitioning to the handle of the toothbrush;

an opposite side of the rigid polymer inner core, the opposite side opposing a side having the plurality of bristle holes, the opposite side substantially covered by the pliable flexible material; and

a pair of pin connectors extending from the opposite side of the rigid polymer inner core, the rigid polymer inner core thereby being substantially encased by the pliable flexible material with an exception of the pin connectors and the side having the plurality of bristles not being fully encased in the pliable flexible material.

* * * * *

# EXHIBIT D

## Case No. 2:17CV01825 - TSZ

## (Representative Claim Chart)

**EXHIBIT D**

**Maxill v. Loops, Case No. 2:17-CV-01825 - TSZ**

**Claim Chart Comparing Claims of U.S. Patent 10,334,940 to**

**Accused Products**

| Claim | Accused Products (SuperMaxx Product) |
|---|---|
| 1. A toothbrush having a composite head, the composite head comprising: | |
| a rigid polymer inner core having a plurality of bristle holes for retention and holding a plurality of toothbrush bristles, the rigid inner core made from a 1st material; |  |
| a pliable flexible material completely surrounding the rigid inner core on a left and a right side in bottom plan view underside aspect, the pliable flexible material being made from a 2nd material; and |  |
| a bond at an interface between the rigid inner core and the pliable flexible material surrounding the rigid polymer inner core, wherein further the rigid polymer inner core is molded to the pliable flexible material thereby forming the composite head having the bond. |   |
| | |
| 2. The toothbrush having a composite head of claim 1, the composite head further comprising: | |
| a tip of the rigid polymer inner core being covered with the pliable flexible material; |  |
| an end of the rigid polymer inner core opposite the tip further having the pliable flexible material adjacent thereto, the end of the rigid polymer inner core opposite the tip transitioning to a handle of the toothbrush; |   |

| Claim | Accused Products (SuperMaxx Product) |
| --- | --- |
| an opposite side of the rigid inner core, the opposite side opposing a side having the plurality of bristle holes, the opposite side substantially covered by the pliable flexible material; and |  |
| a pair of pin connectors extending from the opposite side of the rigid polymer inner core, the rigid polymer inner core thereby being substantially encased by the pliable flexible material with an exception of the pin connectors and the side having the plurality of bristles not being fully encased in the pliable flexible material. |  |
| | |
| 4. A toothbrush having a composite head, the composite head comprising: | |
| a rigid polymer inner core having a plurality of bristle holes for retention and holding a plurality of toothbrush bristles, the rigid polymer inner core made from a 1st material; |  |
| a pliable flexible material substantially surrounding the rigid polymer inner core on a left and a right side in a bottom plan view underside aspect, the pliable flexible material being made from a 2nd material; and |  |
| a flexible handle, the flexible handle at least partially made from the 2nd material, the toothbrush thereby being a safety toothbrush. |  |
| | |
| 6. The toothbrush having a composite head of claim 4, the composite head further comprising: |  |
| a tip of the rigid polymer inner core being covered with the pliable flexible material; |  |

| Claim | Accused Products (SuperMaxx Product) |
|---|---|
| an end of the rigid polymer inner core opposite the tip further having the pliable flexible material adjacent thereto, the end of the rigid polymer inner core opposite the tip transitioning to the handle of the toothbrush; |   |
| an opposite side of the rigid polymer inner core, the opposite side opposing a side having the plurality of bristle holes, the opposite side substantially covered by the pliable flexible material; and |  |
| a pair of pin connectors extending from the opposite side of the rigid polymer inner core, the rigid polymer inner core thereby being substantially encased by the pliable flexible material with an exception of the pin connectors and the side having the plurality of bristles not being fully encased in the pliable flexible material. |   |

CERTIFICATE OF SERVICE

I hereby certify the following: I am over the age of 18 years and am not a party to the above-captioned action. I am a registered user of the CM/ECF system for the United States District Court for the Western District of Washington.

On July 11, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. To the best of my knowledge, all counsel to be served in this action is registered CM/ECF users and will be served by the CM/ECF system.

I declare under penalties of perjury under the laws of the United States that the foregoing is true and correct.

/s/ Kent M. Walker
KENT M. WALKER
kwalker@lewiskohn.com
LEWIS KOHN & WALKER LLP
KENT M. WALKER (173700)