**EXHIBIT A**

Redacted

## CONFIDENTIAL AND SUBJECT TO A PROTECTIVE ORDER – NOT TO BE RELEASED TO THE PUBLIC UNTIL REDACTED

**CITATION:** Loops L.L.C. v. Maxill Inc., 2020 ONSC 5438
**DIVISIONAL COURT FILE NO.:** CVD-LON-65-20ML
**DATE:** 20201027

### ONTARIO

### SUPERIOR COURT OF JUSTICE

### DIVISIONAL COURT

### Swinton, Lederer, Penny, JJ.

**BETWEEN:**

| | | |
|---|---|---|
| LOOPS, L.L.C. and LOOPS FLEXBRUSH, L.L.C. | ) ) ) | *Karen MacDonald* and *Mathew Brechtel*, for the Plaintiffs/Appellants |
| Plaintiffs/Appellants | ) ) | |
| **– and –** | ) ) | *Sandra DiMeo* for the Defendant/Respondent |
| MAXILL INC. | ) ) | |
| Defendant/Respondent | ) ) ) | |
| | ) ) | |
| | ) ) | **HEARD (by videoconference):** September 2, 2020 |

### Lederer J.:

[1]      This is an appeal, with leave, of an Order made on February 3, 2020. The Order dismissed a motion seeking an interlocutory injunction. The appeal is in furtherance of the effort by one of the parties to have this court determine the effect of a settlement agreement made in Ontario in the face of an ongoing action in the United States.

[2]     The moving parties on the motion (the Appellants in this appeal), Loops L.L.C. and Loops Flexbrush L.L.C., are both limited liability companies incorporated pursuant to the law of Delaware ("Loops").  The responding party on the motion (the Respondent in this appeal), Maxill Inc., is a company incorporated pursuant to the law of Ontario ("Maxill Canada").

[3]     On December 7, 2012, Loops commenced an action against Maxill Canada in the Federal Court of Canada. Among other things, Loops alleged that the distribution, sale and offering for sale by Maxill Canada of a toothbrush identified as "Supermaxx" was an infringement of a registered Canadian patent (Canadian Patent No. 2,577,109) owned by Loops. Maxill Canada served and filed a Statement of Defence and Counterclaim. It alleged that the patent was invalid. On October 23, 2013 there was a mediation. A settlement was reached. The result was a "Confidential Settlement Agreement", signed by the parties on April 8, 2014. The Confidential Settlement Agreement provided that:

> a)  effective October 31, 2013, Maxill shall not import, export, make, have made, sell or offer for sale the Supermaxx Toothbrush ███████████████████████ ████████████████████████, *anywhere in the world*.[1]
>
> b)  effective October 31, 2013, Maxill shall not import, export, make, have made, sell or offer for sale a toothbrush ████████████████████████████ ████████████████████████████████████████████ ███████████████████████████████████████████

[Emphasis added]

[4]     The significance of these provisions, in addition to the restrictions they put in place, is the expressed intention that the agreement was to reach beyond Canada. Its impact was to be global.[3] There was a further term of consequence; one which is fundamental to this appeal:

> Maxill Canada and Shaw agree not to directly or indirectly assist any person in attacking the validity of:
>
> ████████████████████████████████████████████ as set out in Schedule B hereto.
>
> (b)…[4]

---

[1] Confidential Settlement Agreement, para. 1
[2] *Ibid*, para. 2
[3] ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████
[4] Confidential Settlement Agreement, para. 13: John Shaw is the president of Maxill Canada. Subparagraph 13 (b) is not relevant to this appeal but for completeness notes that Maxill Canada and Shaw ██████████████████ ████████

Redacted

[Emphasis added]

[5]     Schedule B included reference to a patent owned by Loops in the United States (U.S. Patent No. 8,448,285) demonstrating the applicability of the Confidential Settlement Agreement to the relationship between the parties in the United States. This clause was referred to by the parties, and is referenced in these reasons, as the "no-challenge clause".

[6]     The Confidential Settlement Agreement required that within seven days of its execution Maxill Canada would consent to judgment █████████████████████████████████████ ████████████████████████████████ [5] On April 15, 2014, that judgment was issued by the Federal Court. It provided that:

> The Defendant, Maxill, Inc. (Maxill), through the use of a get-up that is confusingly similar with the Loops Get-up, has directed public attention to its wares in Canada in such a way as to cause or be likely to cause confusion in Canada, at the time it commenced so to direct attention to them, between its wares and the wares and business of Loops, contrary to paragraph 7 (b) of the *Trade-marks Act*.
>
> Maxill has infringed each of claims 1-32 of Canadian Patent No. 2,577,109 entitled "Toothbrush and Methods of Making and Using Same" (the "'109 Patent").
>
> Maxill, by itself and its directors, officers, servants, workmen, agents and employees, is permanently restrained and enjoined from directly or indirectly:
>
> > (a) importing, exporting, making or having made, selling or offering for sale the toothbrushes depicted in Schedule A to this Judgement;
> >
> > (b) further using the Loops Get-up or a get-up that is confusingly similar with the Loops Get-up;
> >
> > (c) further directing public attention to its wares in such a way as to cause or be likely to cause confusion in Canada between its wares and the wares and business of Loops; and
> >
> > (d) further infringing any of claims 1-32 of the '109 Patent. [6]

---

████████████████████████████████████████
██████████████████████████████████████
█████████████████████████████

[5] *Ibid*, para. 4. The judgment is also referred to at paras. 5, 7, 11(a) and 24.
[6] Consent Judgment (The Honourable Mr. Justice Annis) April 15, 2014 at paras. 2, 3 and 4

[7]     On October 30, 2015, Loops commenced this action against Maxill Canada. It claims that the Confidential Settlement Agreement was breached. In part, it alleges that Maxill Canada has sold toothbrushes that the Confidential Settlement Agreement prohibits:

> The Plaintiffs, Loops, L.L.C. and Loops Flexbrush (collectively, "Loops") claim:
>
> (a) a declaration that the Defendant, Maxill Inc. ("Maxill"), has breached the Confidential Settlement Agreement entered into between Loops and Maxill, and made effective on April 9, 2014 (the "Confidential Settlement Agreement") namely that:
>
>> (i) Maxill sold Supermaxx Toothbrushes, or toothbrushes otherwise prohibited by the Federal Court Judgement (as defined herein) (the "Prohibited Brushes"),
>>
>> (ii) Maxill sold items which it was not permitted to sell under the Confidential Settlement Agreement.[7]

[8]     On November 9, 2018 Loops' Statement of Claim was amended to include as allegations:

> (i) Maxill has disclosed, discussed or referenced materials which it was obligated not to disclose, discuss or reference under the Confidential Settlement Agreement.
>
> (ii) Maxill has directly or indirectly attacked the validity of, or assisted another person attacking the validity of, intellectual property owned by Loops which it agreed it would not attack the validity of or assist any person in attacking the validity of, either directly or indirectly.[8]

[9]     During September 2017, Loops commenced a second action. This one is in Utah, and names as one of the defendants Maxill Canada. The court in Utah is said to be the "proper venue" in part because Maxill Canada is a Canadian company that has no principal place of business anywhere in the United States.[9] The "Amended Complaint" alleged infringement of the U.S. Patent owned by Loops, (U.S. Patent No. 8,448,285):

> BBC, Maxill and Doe Defendants 1-10 are infringing the '285 Patent by making, manufacturing, promoting, marketing, advertising, distributing, importing, offering for sale and/or selling the #FXTB Toothbrush, which infringes on, at least claims 1, 2-3, 6, 9, 11-12, and 15-16 of the '285 Patent literally and/or under the doctrine of equivalents.

---

[7] Statement of Claim (October 30, 2015), para. 1
[8] Statement of Claim (November 9, 2018), paras. 1(a)(iv) and (v) and see also paras. 9 and 9(d) and (e). I point out that this Amended Statement of Claim has two paragraphs numbered 9 one which follows immediately after the other.
[9] Amended Complaint for Patent Infringement and Demand for Jury Trial (September 7, 2017), para. 12

Redacted

Page: 5

Loops has been damaged and has suffered irreparable injury due to BBC, Maxill, and Doe Defendants' acts of infringement, and will continue to suffer damages and irreparable injury unless their acts are enjoined.[10]

[10]    I pause in this reciting of the history leading to this appeal to identify and introduce a further corporation of interest. It is a subsidiary of Maxill Canada. It was incorporated in Ohio; like Maxill Canada, it uses the name Maxill Inc. ("Maxill Ohio"). On December 5, 2017, in response to a "Cease and Desist Letter" from Loops, Maxill Ohio commenced an action in the state of Washington seeking a declaratory order that:

(a) the manufacture, use, sale, offer for sale, or importation of Maxill Ohio's Supermaxx Products was not and would not infringe Loops' U.S. Patent No. 8,448,285; and

(b) that U.S. Patent No. 8,448,285 is invalid.[11]

[11]    The two actions underway in the United States have been consolidated and are proceeding in Washington.[12] A motion was brought by Loops to stay the consolidated action. It was refused. The decision, dated July 9, 2019, concluded:

The motion for protective order and stay, docket no. 50, brought by Loops, L.L.C. and Loops Flexbrush L.L.C. ("Loops") is DENIED. Loops contends that this action should be stayed while the parties litigate in Canada concerning an alleged breach of a settlement agreement executed in April 2014. The Court is not persuaded that a stay is necessary. The settlement agreement at issue was between Loops and Maxill Inc., a Canadian corporation ("Maxill-Canada"); Maxill Inc., an Ohio corporation ("Maxill-Ohio") was not a party to the settlement agreement. *See* Ex. A Brechtel Decl. (docket no. 52-1). Thus, even if the settlement agreement precludes Maxill-Canada from "attacking the validity" of United States Patent No. 8,448,285 (the "'285 Patent"), it does not prevent Maxill-Ohio from doing so. Moreover, the "no-challenge" clause contained in the settlement agreement is unenforceable in this patent litigation with regard to the '285 Patent. *See Massillon-Cleveland-Akron Sign Co.* v. *Golden State Advert. Co.,* 444 F.2d. 425, 427 (9th Cir. 1971); *see also Rates Tech. Inc. v. Speakeasy, Inc.,* 685 F.3d. 163 (2d Cir. 2012). The Canadian lawsuit that culminated in the settlement agreement and a consent judgment involved only Canadian Patent No. 2,577,109, and the validity of the '285 Patent was not at issue in the prior proceedings. *See* Ex. E to Brechtel Decl. (docket no. 50-3 at 7, ¶ 6); *see also* Ex. 1 to DiMeo Decl. (docket no. 60).

[12]    And provided this rationale:

---

[10] *Ibid,* paras. 25 and 26
[11] Complaint for Declaratory Judgment (December 5, 2017), paras. 34, 37 and 40
[12] Answer to Consolidated Plaintiff Loops, L.L.C.'s and Loops Flexbrush L.L.C.'s Amended Complaint for Patent Infringement and Demand for Jury Trial (August 27, 2018)

Thus, with respect to the '285 Patent, the "no-challenge" clause constitutes an attempt to resolve a dispute about patent validity prior to any litigation, which runs contrary to the "strong federal policy favoring the full and free use of ideas in the public domain." *Lear, Inc.* v. *Adkins*, 395 U.S. 653, 674 (1969); *see also Rates Tech.,* 685 F.3d at 170-71; *Massillon*, 444 F.2d at 427. In contrast to final judgments, consent decrees, and settlement agreements with "no-challenge" clauses relating to patents actually "in suit," *see Flex-Foot, Inc. v. CRP, Inc.,* 238 F.3d 1362, 1369 (Fed. Cir. 2001), pre-litigation settlements containing "no-challenge" clauses threaten to "muzzle" those who might be the only entities with "enough economic incentive to challenge the patentability of an inventor's discovery," and thereby force the public to continue to "pay tribute to would-be monopolists without need or justification." *Lear*, 395 U.S. at 670; *see also Rates Tech.,* 685 F.3d at 172 (holding that "covenants barring future challenges to a patent's validity entered into prior to litigation are unenforceable, regardless of whether the agreements containing such covenants are styled as settlement agreements or simply as license agreements").[13/14]

[13]    The ruling, in Washington, refusing the stay was followed by the motion for an interlocutory injunction from which this appeal is taken. It was heard on September 16, 2019, and a decision issued February 3, 2020. Loops sought an order prohibiting Maxill Canada from challenging, either directly or indirectly, the validity of the U.S. Patent owned by Loops (U.S. Patent No. 8,448,285). The motion relied on the no-challenge clause. It was said that the impact of the clause is that Maxill Canada had, by contract, agreed that it would not "directly or indirectly assist any person attacking the validity ███████████████████████████ ████████████████ as set out in Schedule B hereto." This would include U.S. Patent No. 8,448,285 owned by Loops.

[14]    In analysing the positions of the parties and their submissions the motion judge applied the three-part test found in *RJR-MacDonald Inc. v. Canada (Attorney General)*:[15]

(a) is there a serious issue to be tried;

(b) would the party applying for the injunction suffer irreparable harm if the injunction is not granted; and

(c) is the balance of convenience in favour of granting the interlocutory injunction or denying it?[16]

---

[13] Minute Order of Judge Thomas Zilly, United States District Judge dated July 9, 2019
[14] The decision of the motion judge, at para. 25, notes that "the parties were thereafter able to agree to a stay pending resolution of this action." This is incorrect. There is no stay. However, it is still open to the parties to agree to one (see: Factum of the Plaintiffs/Appellants (Loops), para. 24 and Factum of the Defendant/Respondent (Maxill), para. 15.)
[15] [1994] 1 SCR 311, 164 NR 1, 111 DLR (4th) 385, 60 QAC 241, 54 CPR (3d) 11, 1994 CanLII 117 (SCC),
[16] *Loops v. Maxill Inc.,*2020 ONSC 971 (CanLII) at para. 4

[15]    The motion judge understood that in this case, because the injunction sought involved the enforcement of a restrictive covenant, the first part of the test imposed a higher standard. That requirement would only be satisfied if there is a "strong *prima facie* case".[17] In such circumstances the weight to be given to the second and third parts of the test may be reduced. They may become less of a concern depending on the strength of the plaintiff's case.[18] In their submissions and their facta, the parties agreed that the test as outlined by the motion judge applies.[19]

*Strong prima facie case*

[16]    What is a *prima facie* case? *Prima facie* refers to a first view or impression. A *prima facie* case has been described as follows:

> At first sight; on the first appearance; on the face of it; so far as can be judged from the first disclosure; presumably. A litigating party is said to have a prima facie case when the evidence in his favor is sufficiently strong for his opponent to be called on to answer it. A prima facie case, then, is one which is established by sufficient evidence, and can be overthrown only by rebutting evidence adduced on the other side.[20]

[17]    The motion judge was not satisfied that there was a strong *prima facie* case demonstrating the breach of the Confidential Settlement Agreement, in particular the obligations put in place by the no-challenge clause. As the motion judge understood it, Maxill Canada, the defendant in this proceeding, is a party to an agreement the alleged breach of which is the basis for this Canadian proceeding. However, the challenge to the validity of the U.S. patent was perpetrated by Maxill Ohio, a separate and distinct legal entity that was not a party to the Confidential Settlement Agreement. She concluded that Maxill Canada, the signatory of the Confidential Settlement Agreement, was not a party to the breach, because it did not allege invalidity in the U.S. action, and the settlement agreement only prevented it from assisting a party to challenge validity of the U.S. patent. Thus, any obligation the no-challenge clause may have imposed was not relevant. Reliance on the no-challenge clause could not support the presence of a strong *prima facie* case against Maxill Canada. This is the same as the first rationale provided by the court in Washington for refusing the request for a stay to the consolidated action that is on-going there.

[18]    This determination requires further inquiry.

---

[17] *Ibid,* para. 6
[18] *Van Wagner Communications Co., Canada v. Penex Metropolis Ltd.,* 2008 CanLII 1427 (SCJ) at para. 39 leave to appeal ref'd 2008 CarswellOnt 3899 (Div. Ct.)
[19] Factum of the Plaintiffs/Appellants at paras. 28 and 29; The Factum of the Defendant/Respondent notes that the decision of the motion judge "was based on settled Canadian law regarding the enforceability of restrictive covenants, and the law of interlocutory injunctions" (para. 19), refers to her finding that the Appellants "had not established a strong *prime facie* case" (para. 20), to her analysis of irreparable harm (paras. 61-72) and to her application of the balance of convenience (paras. 72-77).
[20] The Law Dictionary (Black's Law Dictionary Free Online Dictionary, 2nd Ed.)

Redacted

[19]    In coming to this conclusion, the motion judge relied on the case of *Knorr-Bremse Systems for Commercial Vehicles Ltd. v. Haldex Brake Products GmbH*.[21] Knorr-Bremse System fur Nutzfahezeuge GmbH ("Knorr GmbH") and Haldex are manufacturers of brake systems. Both are German corporations. Haldex brought an action, in Germany, claiming that Knorr GmbH had infringed a patent it owned. The claim was rejected. On appeal it was found that there was no "literal infringement" but that on a "purposive construction" the patent was infringed. The process continued. Haldex added a claim alleging infringement of a second patent and Knorr GmbH indicated it would commence "nullity proceedings". There was a settlement. The next year, the named Claimant (*Knorr-Bremse Systems for Commercial Vehicles Ltd.*), an English company, identified as part of the Knorr-Bremse Group ("Knorr UK") initiated the development and design of a new valve. This work was undertaken entirely independently of Knorr GmbH. Knorr UK expected that Haldex would acknowledge that the valve did not infringe either of the two patents that were the subject of the settlement. The acknowledgement was not forthcoming and a proceeding commenced in the England and Wales High Court. Knorr UK sought a declaration of non-infringement. Haldex brought a motion for a stay.

[20]    The settlement agreement contained provisions prohibiting the infringing of the two patents or challenging their validity (a no-challenge clause) and directing that disputes were to be resolved by the "patent disputes division of the Regional Court in Dusseldorf". Much of the decision concerns the question of jurisdiction. It was common ground that Knorr UK was entitled to sue in the England and Wales High Court for a declaration of non-infringement, in the absence of any contractual impediment. The issue was whether the settlement agreement was such an impediment. It was understood that if Knorr UK was not a party to or not bound by the settlement agreement then the motion for a stay would fail. The Court determined that, under the law that applied,[22] the Court was to be satisfied that the person against whom the jurisdiction agreement was invoked actually consented to it. There was no agreement between Knorr UK and Haldex. The only agreement was between Knorr GmbH and Haldex. There was no contractual impediment. The England and Wales High Court maintained jurisdiction. The application for a stay was dismissed. This was not the end. The relief sought was the declaration. The question that remained was whether, nonetheless, the validity of the two patents had been raised. The Court found that it had, leaving open the question of whether Knorr UK was bound by the no-challenge provision. The court noted what seems obvious; if the settlement agreement was not binding on Knorr UK then it was not bound by the no-challenge clause the agreement contained.

[21]    The difficulty in applying the case is that it relies entirely on the separation of the English company from the earlier litigation and the settlement agreement as well as the independence of the effort that resulted in the development, design and sale of the new valve. In the case being considered, Maxill Canada was a party to the Confidential Settlement Agreement. It is the party against whom a remedy is being sought in this litigation. It is not independent of what is transpiring

---

[21] [2008] EWHC 158 (Pat)

[22] There was an issue as to whether the applicable law was German Law or law found in what I understand to be a regulation of the European Union on jurisdiction and the recognition and enforcement of judgments in civil and commercial matters (Council Regulation (EC) No. 44/2001). The Court found that it was the regulation that applied but went on to consider that the application of German law would have arrived at the same result (see para. 39 of the decision).

Redacted

Page: 9

in the United States. It is a party to that litigation. The problem with the decision of the motion judge is not hard to find. At para. 22 of her decision she stated:

> In September 2017, Loops also commenced an action in Utah, United States against Maxill (Ohio) for alleged infringement of its U.S. Patent No. 8,448,285. The focus of the controversy in that action was the distribution and sale of Maxill Canada's newly designed Supermaxx toothbrush un the U.S.

[22]    She was mistaken. This law suit names Maxill Canada, not Maxill Ohio, as the defendant.[23] Maxill Canada continues as a party in the consolidated action.[24] Unlike Knorr UK, Maxill Canada is a party to the settlement agreement, and on its face the no-challenge clause applies to it. Any analysis should look further at whether there is a strong *prima facie* case that Maxill Canada has breached the no-challenge clause.

[23]    The concern for the actions taken and positions offered by Maxill Canada began before the Confidential Settlement Agreement was entered into. Steven Kayser is the president of Loops (both corporations). He swore an affidavit on June 7, 2019. ████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████

████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████

[Emphasis added]

[24]    This action, brought in the Superior Court of Ontario, was commenced because Loops learned that, after the execution of the Confidential Settlement Agreement, Maxill Canada

---

[23] The Amended Complaint for Patent Infringement and Demand for Jury Trial (September 7, 2017), para. 3:

> Upon information and belief, Defendant Maxill Inc. ("Maxill") is [a] Canadian corporation with its principal place of business in Ontario, Canada.

[24] The Answer to Consolidated Plaintiff Loops, L.L.C.'s and Loops Flexbrush L.L.C.'s Amended Complaint For Patent Infringement and Demand for Jury Trial refers to "Consolidated Defendant Maxill Inc. a Canadian Corporation. The second reference to Maxill in the style of cause (the one referencing Maxill as the Defendant) identifies the party as Maxill Inc. a Canadian corporation.
[25] *Affidavit of Steven Kayser,* sworn June 7, 2109, para. 9.

Redacted

continued to sell items, that were at that time, contrary to the agreement, presumably in breach of the patents:

> On or about March 28, 2017, Loops learned that Maxill was continuing to sell items it was not permitted to sell under the Confidential Settlement Agreement, among other breaches. Loops commenced the within action to enforce the Confidential Settlement Agreement.[26]

[25]    Kent M. Walker is counsel to Loops in the consolidated action, ongoing in Washington. In an affidavit sworn on June 12, 2019 he deposed:

> On or about February 27, 2018, Maxill served Initial Invalidity Contentions in the Utah Action, alleging invalidity of U.S. Patent No. 8,448,285 (the "U.S. Patent"). On or about July 24, 2018, Maxill served Pro Forma Final Invalidity Contentions in the U.S. Action, alleging invalidity of the U.S. Patent. Attached hereto as Exhibit "C" and "D" are true copies of the Initial Non-Infringement and Invalidity Contention in the Utah Action and Pro Forma Final Invalidity Contention in the U.S. Action, respectively.[27]

[26]    As the affidavit says, both the Initial Invalidity Contentions and the Pro Forma Final Invalidity Contentions allege that the U.S. patent owned by Loops is invalid. The first was delivered within the action commenced in Utah. The second was filed in the same action, but in Seattle. It had been transferred to the Western District of Washington, pending consolidation. In these documents the references to Maxill are to Maxill Canada. They both include this paragraph:

> Pursuant to LPR 2.4(b)(I), (2), and (3), Maxill contends that the Asserted Claims are invalid as anticipated by the prior art under various subsections of 35 U.S.C § 102 (pre-AIA) and/or as obvious in view of the prior art under 35 U.S.C. § 103 (pre-AIA). The tables provided in these Initial Invalidity Contentions demonstrate when pieces of prior art identified by Maxill disclose and/or render obvious each limitation of the Asserted Claims.[28]

[27]    In his affidavit Kent M. Walker goes on to recognize the consolidation and identifies a further pleading:

> On or about July 30, 2018, the Utah Action was combined with the U.S. Action. Attached hereto as Exhibit "E" is a true copy of the order combining the Utah Action and the U.S. Action. Attached hereto as Exhibit "F" is a true copy of the

---

[26] *Ibid,* para. 10
[27] *Affidavit of Kent M. Walker,* sworn June 12, 2019, para. 4
[28]*Ibid*, Exhibit C, p. 6 of 32 and see pp. 7, 8, 27 and 28 of 32 and Exhibit D, p. 3 of 35 and see pp. 5, 6, 25 and 26 of 35

Redacted

Answer to Consolidated Plaintiff Loops, LLC's and Loops Flexbrush, LLC's Amended Complaint for Patent Infringement and Demand for Jury Trial.[29]

[28]    The "Answer to Consolidated Plaintiffs" is dated August 27, 2018. The "Consolidated Defendant" is described as "a Canadian Corporation". The Consolidated Defendant is Maxill Canada. This document continues the same allegation of invalidity found in the Initial Invalidity Contentions and the Pro Forma Final Invalidity Contentions:

> The claims of the '285 Patent are invalid for failure to comply with one or more of the requirements of Title 35, United States Code including, without limitation, §§ 101, 102, 103, and/or 112.[30]

[29]    There is another pleading filed within the consolidated action entitled "Preliminary Non-Infringement and Invalidity Contentions" and dated October 12, 2018. Maxill is defined as including both Maxill Canada and Maxill Ohio:

> Pursuant to the District of Western Washington's Local Patent Rules ("LPR") and the Court's Minute Order, dated, August 30, 2018, ("Scheduling Order") for the above-captioned case Maxill, Inc., an Ohio corporation and Maxill Inc., a Canadian corporation (collectively "Maxill") through their undersigned counsel, provide the following Preliminary Non-Infringement and Invalidity Contentions on Loops, LLC and Loops Flexbrush, LLC (collectively, "Loops"). Maxill reserves the right to amend these contentions based on additional information gained in ongoing discovery concerning the Asserted Claims (claims 1, 2, 3, 5, 6, 9, 11, 12, 13, 15 and 16 of the U.S. Patent No. 8,448,285, "the '285 patent," asserted by Loops against Maxill) and prior art.

> These preliminary non-infringement and invalidity contentions are based on Maxill's current knowledge of the U.S. Patent No. 8,448,285 ("the '285 patent" or the "patent-in-suit"), the prior art, the evidence of prior sale and prior use, and Plaintiffs' contentions in this case. Maxill continues to pursue discovery and to investigate and analyze prior art. As such, Maxill may seek to amend these contentions pursuant to the Local Patent Rule 124.

[30]    This document continues the expressed intention of Maxill, including Maxill Canada, the signatory to the Confidential Settlement Agreement, to pursue the invalidity of the U.S. patent owned by Loops in the face of the no-challenge clause:

> All claims of the '285 patent are invalid for a failure to provide a written description of the claimed invention.

---

[29] *Ibid*, para. 5
[30] *Ibid*, Exhibit F (ANSWER TO CONSOLIDATED PLAINTIFF LOOPS, LLC'S AND LOOPS FLEXBRUSH, LLC'S AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL para. 29

….

All claims of the '285 patent are invalid for a lack of enablement of the claimed invention. [31]

[31]    The efforts to pursue invalidity do not stop with the pleadings:

On or about May 24, 2019, Maxill filed a motion to compel Loops to provide corporate deposition testimony regarding Maxill's invalidity contentions. Loops opposition is due June 14, 2019. Attached hereto as Exhibit "I" is a true copy of Maxill's motion. [32]

[32]    ██████████████████████████████████████████████████
████████████████████████████████████████████ these "Contentions" and the "Answer" are contrary to the Consolidated Settlement Agreement.

[33]    The prospect that collectively Maxill Canada and Maxill Ohio (the "Maxill interests") are attempting to nullify the impact of the Confidential Settlement Agreement is underscored by their treatment of the claim of prior art that was part of Maxill Canada's defence in the action brought in the Federal Court of Canada. ████████████████████ The disposition by Maxill Canada of any remaining inventory was dealt with in the Confidential Settlement Agreement. [33] Within that contract, Maxill Canada agreed that:

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████

[Emphasis added]

[34]    As ████████████████████████████████████████
██████████████ The "Answer to Consolidated Plaintiffs" dated August 27, 2018 includes:

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

---

[31] *Ibid*, Exhibit G (MAXILL'S PRELIMINARY NONINFRINGEMENT AND INVALIDITY CONTENTIONS PURSUANT TO LRP 121, 122 & 123.), pp. 1-2, 40, 43-47 and 41
[32] *Ibid,* para. 8 (mistakenly numbered as 6)
[33] Confidential Settlement Agreement, paras. 7, 8, 9 and 10
[34] *Ibid*, para. 14

Redacted

██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
████████████████████████

…

██████████████████████████████████████
█████████████████████████████████ [35]
█████████████████████████████

[35]    John Shaw is the president of Maxill Canada. In an affidavit sworn on August 20, 2017 he explains why the claim that the U.S. patent owned by Loops is invalid was made:

> Strictly as a result of Loops having commenced the Utah Action, on December 5, 2017, Maxill Ohio asked the court in Washington for a declaration that Maxill Ohio was not infringing Loops' U.S. patent 8,448,285 and that the patent was invalid. In other words, Maxill Ohio would not have sought a declaration from the Washington court, if Loops had not commenced the Utah Action against Maxill Canada first.[36]

[36]    John Shaw goes on to explain why it was open to Maxill Canada to plead that the patents were invalid in the face of the no-challenge clause:



[37]    In the view of Mr. Shaw, the settlement agreement prevents Maxill from directly attacking the validity of Loops' patents.  However, it does not bar Maxill from raising invalidity as a defense in a patent enforcement proceeding.   In contrast, Loops takes the position that the settlement agreement bars Maxill from attacking the validity of its patents either directly or indirectly.   Before

---

[35] *Affidavit of Kent M. Walker,* sworn June 12, 2019, Exhibit F (ANSWER TO CONSOLIDATED PLAINTIFF LOOPS, LLC'S AND LOOPS FLEXBRUSH, LL'S AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL), para. 38 and 41. The name "Bigger" as found in para. 38 is misspelled. It should be "Biggar".
[36] *Affidavit of John Shaw,* sworn August 20, 2019, paras. 13 and 16
[37] *Ibid,* para. 17

the motions judge, the first question to be resolved, with respect to the criterion of a strong *prima facie* case was the proper interpretation of the settlement agreement.

[38]    An understanding of the intention of any contract begins with the words used in the agreement. In this case there is nothing in the no-challenge clause that distinguishes an attack on the validity of a patent commenced in response to a claim for a breach of the settlement agreement from an attack that originates in a proceeding initiated by Maxill Canada. The injunction against questioning the validity of the applicable patents found in the no-challenge clause is clear. The suggested distinction would render the no-challenge clause largely meaningless. If the Maxill interests were not content with the arrangement put in place by the Confidential Settlement Agreement and wished to have the patents declared invalid, they need do nothing more than start selling toothbrushes that infringe and wait for Loops to sue. From Loops' perspective, the point of the arrangement was to ensure that if there was a breach, it would not be open to the Maxill interests to rely on the patents being invalid as part of their defence to any allegation of infringement.

[39]    Contrary to the finding of the motion judge, the presence or absence of a strong *prima facie* case is not determined by an understanding that Maxill Canada, as the only Maxill signatory to the Confidential Settlement Agreement, is separate and removed from the proceedings ongoing in the United States. She erred in finding that it is not a party.  It is a party to those proceedings and the pleadings that have been filed. Contrary to its undertaking not to attack the validity ███████████ ██████████████████████████████████████████████████████████████ as set out in ███████████ to the Confidential Settlement Agreement those pleadings demonstrate a reliance on the alleged invalidity of the applicable patents.  The evidence and the wording of the agreement demonstrate that the motion judge erred in finding that there was not a strong *prima facie* case of breach of the terms of the settlement agreement.

[40]    In her ruling the motion judge considered not only the question of who was bound by the Confidential Settlement Agreement and the relationship of that party to the action underway in Washington but also the breadth of the restriction imposed by the no-challenge clause. Counsel in the facta filed on this appeal and in their submissions advised the court that the motion judge interpreted the clause in a way that was not the subject of any submissions and with which both sides disagree. The motion judge examined the wording of the no-challenge clause. She compared it to the restrictive covenant in *Knorr-Bremse Systems for Commercial Vehicles Ltd. v. Haldex Brake Products GmbH*. As found by her, the no-challenge clause does not refer to and does not restrict the activities of Maxill Canada carried out on its own behalf. It only enjoins the assistance it may provide to others. In *Knorr* the clause in issue drew a clear distinction:

> KB undertake *neither* to challenge PATENTS 1 and 2 or national parts of these patents themselves *nor* to support third parties in challenging these patents.[38]
>
> [Emphasis added]

---

[38]*Knorr-Bremse Systems for Commercial Vehicles Ltd. v. Haldex Brake Products GmbH, supra* (fn. 20), para. 11 quoted in *Loops v. Maxill Inc., supra* (fn.16), para. 48

Redacted

[41]    As seen by the motion judge the inclusion of the words "neither" and "nor" serve to create a two-part undertaking by the party signing the agreement, namely, not to take any personal action in challenging the validity and not to assist others in doing so. In the absence of the two words she found that the personal undertaking of Maxill Canada has not been included.[39]

[42]    The parties both acknowledge this is not a proper interpretation of the clause. On Loops' behalf it is said that they both recognized that the no-challenge clause was intended to prevent Maxill Canada from challenging the validity of the U.S. patent. The interpretive point on which they joined issue was whether the no-challenge clause prevented Maxill Canada from raising the validity of that patent as a defence in the existing proceeding or if the no-challenge clause was absolute.[40] Maxill Canada does not dispute this position. It says only that issue is of no consequence in understanding the determination of the motion judge to dismiss the motion.[41]

[43]    For Maxill Canada to say otherwise would be inconsistent with the justification John Shaw offered for his view that, when Maxill Canada is sued for infringement of the applicable patents and breach of the Confidential Settlement Agreement, a defence of invalidity of the patents is open to the Maxill interests.

[44]    In deciding to dismiss the request for an interlocutory injunction, the motion judge found there was a serious issue to be tried[42] but not a strong *prima facie* case. How is one standard different from the other? A serious issue to be tried is a flexible standard. There are no specific requirements to be satisfied. The judge is to make only a preliminary assessment of the merits. The threshold to be met is low. The judge must be satisfied that that the application is neither frivolous or vexatious.[43] Conversely, a strong *prima facie* case is a high standard, said, in one case to be "a strong case with a high although not absolutely assured likelihood of success based on the material presently before the court."[44]

[45]    Taking the case as developed to this point and going no further, I would find that the motion judge erred in failing to conclude that a strong *prima facie* case of breach is present. There is a legally binding contract, it was entered into by the parties to resolve an outstanding dispute between them. The meaning of the clause in issue is clear and unambiguous: by the restrictive covenant the Maxill interests have agreed not to challenge the validity of the U.S. Patent and in breach of that agreement Maxill Canada has been a party to pleadings in the action in Washington asserting that the U.S. Patent is invalid.

[46]    The application for a stay of the consolidated action proceeding in the court in Washington was dismissed, in part because it was Maxill Canada that was the signatory to the Confidential

---

[39] *Loops v. Maxill Inc., supra* (fn.16), paras. 49 and 52
[40] *Factum of the Plaintiffs/Appellants,* para. 41
[41] *Factum of the Defendant/Respondent,* para. 20
[42] *Loops v. Maxill Inc., supra* (fn.16), para. 79
[43] *Wong v. 10658987 Canada Inc. et al*., 2020 ONSC 2469 (CanLII), para. 61 referencing *R.J.R. MacDonald v. Canada (Attorney General)* [1994] 1 S.C.R. 311, 111 DLR (4th) 385, 54 CPR (3d) 114, [1994] CarswellQue 120, 1994 CanLII 117 (SCC) at p. 26
[44] *Quizno's Canada Restaurant Corporation v. 1450987 Ontario Corp.,* 2009 CanLII 20708 (ON SC), para. 42

Redacted

Settlement Agreement. As the Court saw it the Agreement was not an impediment to Maxill Ohio using the validity of the U.S. patent as a defence in that action. The Court makes no reference to the ongoing role of Maxill Canada in the U.S. litigation. It did not mention the idea that, pursuant to the Agreement, Maxill Canada has agreed not to assist any other party, including Maxill Ohio, in employing invalidity of the patent as a defence or to the understanding that the settlement agreement and consent judgment do apply to the U.S. patent as a corresponding patent that is set out in Schedule B to the Confidential Settlement Agreement. The Court in Washington found that the stay was "not necessary." Nonetheless, with an injunction from this Court in place, it may be that the Court in Washington will find the Canadian perspective of assistance.

[47]    The question that remains in finally deciding if there is a strong *prima facie* case is whether there is material before the Court rebutting the evidence considered so far. Maxill Canada submitted that there is and that the motion judge properly relied on it in dismissing the motion.

[48]    The question is whether the restrictive covenant (the no-challenge clause) is reasonable in the public interest. If it is not in the public interest, the clause will not be enforced. Such evidence will rebut the presence and set to the side a finding that there is a strong *prima facie* case. The motion judge found that it is not. She expressed the view that:

> … to preclude a subsequent perhaps valid defence for the personal gain, profit or protection of one party to an agreement would run counter to the proper administration of justice, regardless of the consent of the other party to that agreement. It is trite law that the power to enter into a contract is broad but not without limit.

[49]    And on this basis concluded:

> In a contract that includes a "No-challenge clause", the price to pay by one party is access to a potentially valid legal position that has potential to affect the public at large. In my view, that price is simply too high if public trust and confidence in the administration of justice are to be maintained.[45]

[50]    There may be limits to the power to contract where the general public is harmed. An agreement, between competitors, to fix the price of some generally required good or service is an example of such a limit. However, so far as I am aware, agreeing in a contract to preclude the subsequent use of a defence that is otherwise available simply because it will result in personal gain or protection of one party is not one. To impose such a limitation would require evidence of the "price" so that a rational understanding that it is "too high" can be arrived at and the threat to public trust and confidence in the administration of justice is explained. Put differently there would have to be evidence that allowed the court to weigh the implications (both negative and positive) of enforcing the no-challenge clause against the implications of refusing to do so. In this case there was no such evidence in the record in this court or before the motion judge.

---

[45]*Loops v. Maxill Inc., supra* (fn.16), paras. 69 and 70

[51]    The motion judge does not purport to rely on evidence to support her finding. She refers to case law as the foundation for this policy proposition. The Confidential Settlement Agreement is governed by the laws of Canada and Ontario:


.[46]

[52]    However, the motion judge indicates that she is unaware of any binding Canadian authority concerning this issue. She turns to U.S. case law and, in particular, to the decision of the Court in Washington denying the stay requested by Loops and the observation that using a no-challenge clause to resolve disputes about patent validity prior to litigation runs contrary to the "strong federal policy favouring free use of ideas in the public domain".[47] The motion judge noted two cases relied on by the Court in Washington: *Lear, Inc. v. Adkins*[48] and *Massillon-Cleveland-Akron Sign Co. v. Golden State Advert Co.*[49]

[53]    Lear needed to improve its navigation system to accommodate modern, faster aircraft. It entered into an arrangement with Adkins. If he found a solution, he would own the rights. Lear would pay him a licencing fee. He did and, for a time, Lear did. Adkins went through a protracted, but as described in the case, a not unusual process to obtain a patent. Once he had, Lear undertook a search of the patent office and located another patent that anticipated the Adkins discovery. Lear refused to pay at least some of the royalties it otherwise would have owed. The single issue left to the United States Supreme Court was the application of the doctrine of estoppel to bar Lear from contesting the validity of the patent obtained by Adkins. The Court set aside the estoppel:

> Surely the equities of the licensor do not weigh very heavily when they are balanced against the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain. Licensees may often be the only individuals with enough economic incentive to challenge the patentability of an inventor's discovery. If they are muzzled, the public may continually be required to pay tribute to would-be monopolists without need or justification. We think it plain that the technical requirements of contract doctrine must give way before the demands of the public interest in the typical situation.[50]

[54]    The public interest in free competition in ideas was enough to set aside application of the doctrine. Lear would avoid the payment of the royalty accruing once the patent was issued if it could demonstrate the patent was invalid. *Lear* is distinguishable from the case being considered in that it took account of the balancing of two general policy concerns: the interest of the licensor and the desire to encourage innovation against the full and free competition in the use of ideas. In

---

[46] Confidential Settlement Agreement, para. 21
[47] As referred to in the decision of the court in Washington, see paras. [11] and [12] above.
[48] 395 U.S. 653 (1969)
[49] 444 F. 2d 425
[50] *Lear v. Adkins, supra* (fn. 47), 395 U.S. p. 670

Redacted

that case there was no provision within the contract the parties had agreed to (as part of the consideration exchanged) forfeiting any right to contest the validity of the patent.

[55]    In the second case, Massillon-Cleveland-Akron Sign Co. purchased a patent. It sued Golden State Advert Co. and others for infringement. The case settled. In a written agreement the defendants acknowledged the infringement, covenanted not to infringe in the future, paid $500 as liquidated damages and agreed not to contest the validity of the patent. Two years later there were further infringements but it was determined they were not deliberate and minor. No action was taken. Four years after that, further infringements in breach of the settlement were alleged and an action commenced. In response, issues of misuse of the patent and invalidity were raised. These portions of the pleading were struck. This was not an action for infringement. Rather it was for breach of the settlement agreement. The decision in *Lear* intervened. The Court of first instance was asked to reconsider its decision. It left its earlier ruling in place. *Lear* was distinguished. It did not entitle the defendants to question the validity of the patent in the face of the settlement agreement they had made. There was a further appeal. The appellate court reviewed the decision in *Lear,* in particular references to the impact of the contract. The Court quoted *Lear*:

> The parties' contract, however, is no more controlling on this issue than is the State's doctrine of estoppel, which is also rooted in contract principles. The decisive question is whether overriding federal policies would be significantly frustrated if licensees could be required to continue to pay royalties during the time they are challenging patent validity in the courts. * * * * * * enforcing this contractual provision would undermine the strong federal policy favoring the full and free use of ideas in the public domain.[51]

[56]    Based on the rationale in *Lear* the Court held that the agreement not to contest the validity of the patent was void on its face and not enforceable:

> It is in just as direct conflict with the "strong federal policy" referred to repeatedly in *Lear* as was the estoppel doctrine and the specific contractual provision struck down in that decision.[52]

[57]    It is these two cases that are the foundation for the finding of the motion judge that allowing the no-challenge clause to stand would "run counter to the proper administration of justice" and that the price of doing so was "simply too high".

[58]    The motion judge acknowledged that the Confidential Settlement Agreement was to be construed according to Ontario and Canadian law but turned to these American authorities because

---

[51] *Ibid,* 395 U.S. p. 673-674 quoted at *Massillon-Cleveland-Akron Sign Co. v. Golden State Advert Co. supra* (fn. 48), p. 3 of 5
[52]*Massillon-Cleveland-Akron Sign Co. v. Golden State Advert Co. supra* (fn. 48), p. 4 of 5

Redacted

counsel was unable to provide her with any "binding authority" concerning this issue in Canada. In fact, *Lear* has been considered and rejected in the courts of both Quebec and Ontario.[53]

[59]    In *Louiseville Spinners Ltd. v. Deering Milliken Research Corp.*[54] the plaintiff granted defendants a patent licence for the manufacture of crimped synthetic yarns. The licence agreement contained a no-challenge clause which acknowledged the validity of the patent and bound the defendant not to contest or be a party to any proceeding disputing it. In an action for unpaid royalties the plaintiff successfully applied to strike out passages of the defendants' invalidity pleadings. On appeal, the defendants cited *Lear* and argued the invalidity pleading was essential to their defence. The Quebec Court of Appeal unanimously upheld the decision of the trial judge:

> Counsel for defendants rely upon the decision of the Supreme Court of the United States in *Lear Inc. v. Adkins* (1969), 395 U.S. 653. The Supreme Court there held, overruling certain earlier decisions, that a licensee under a patent was not estopped from contesting its validity. There was in that case no express undertaking not to contest. Counsel for defendants were unable to cite any similar decision in Canada or any direct authority for holding cl. 14 invalid. The general rule of our law is that the Courts will give effect to the intentions of the parties as clearly expressed by contract. I recognize that our Courts view with disfavour clauses limiting access to the Courts. I do not find this to be such a clause. Defendants retain their full right of access to the Courts, but they are bound by the admissions they have made, in the absence of error or fraud, which they have not alleged. To the extent that there may be some doubt as to the validity of the patents, this acknowledgement of their validity may be regarded as in the nature of a transaction (arts. 1921 to 22 *C.C.*). The clause is also analogous to a limitation of warranty in a contract of sale. I see no reason for holding it invalid.[55]

[60]    In *Asturiana de Zinc v. Canadian Electrolytic Zinc Ltd.*[56] the defendant licensed a patented process from the plaintiffs in return for the payment of royalties. The licence contained a no-challenge clause. The defendant used the process for five years and then adopted a different process which it claimed was not subject to the patents. It terminated the licence. The plaintiff brought an action claiming the new process was covered by its patents and that the defendant was liable for royalties. The defendant counterclaimed, alleging among other things, that the patents were invalid.

[61]    The plaintiff obtained an order to strike the paragraphs of the statement of defence claiming invalidity, which was upheld on appeal. In refusing leave to appeal that order, the Court confirmed the validity of the no-challenge clause. The judge relied on *Louiseville Spinners* in company with other authorities from England and Ontario:

---

[53] *Loops v. Maxill Inc., supra* (fn.16), para. 61
[54] 1972 CarswellQue 166, 7 C.P.R. (2d) 18 (Que. CA)
[55] *Louiseville Spinners Ltd. v. Deering Milliken Research Corp., supra* (fn. 55), para. 10
[56] 1979 CarswellOnt 1555, [1979] 3 A.C.W.S. 557, 55 C.P.R. (2d) 131 (Ont. H.C.J.)

Redacted

In his reasons, Eberle J. referred to "the consistent current of authority in England, in this country and in this Province" that a licensee is not permitted to dispute the validity of the patents. The principle is exemplified in England in *Liardet v. Hammond Electric Light & Power Co.* (1883), 31 W.R. 710; *Ashworth v. Law* (1890), 7 R.P.C. 231; in Ontario in *Duryea v. Kaufman* (1910), 21 O.L.R. 161; *Coyle v. Sproule* (1941), 2 C.P.R. 125, [1942] 3 D.L.R. 126, [1942] O.R. 307, and has been accepted in the Court of Appeal for Ontario in *Anderson v. E. J. Shepard Ltd.* (1930), 66 O.L.R. 105; for Quebec in *Louiseville Spinners Ltd. v. Deering Milliken Research Corp.; Bruck Mills Ltd. v. Deering Milliken Research Corp.* (1972), 7 C.P.R. (2d) 18; and for Manitoba in *Rymland et al. v. Regal Bedding Co. Ltd. et al.* (1966), 51 C.P.R. 137, 59 D.L.R. (2d) 316, 34 Fox Pat. C. 145. It is sometimes known as "the estoppel rule".[57]

[62]    In the present case, the motion judge found that as a restrictive covenant, the no-challenge clause was not reasonable in the public interest and, thus, cannot be relied on by *Loops*. This supports her determination that there is no strong *prima facie* case. But there are Canadian cases confirming the application of the estoppel principle in this country.

[63]    The Judge in *Asturiana de Zinc v. Canadian Electrolytic Zinc Ltd.* recognized that "a new path" had been taken in other jurisdictions (citing *Lear v. Adkins*[58]). He expressed some sympathy for that idea, noted that the Supreme Court of Canada had not yet ruled on the matter and recognized that the Court of Appeal might be inclined to a fresh look. He ended his expression of concern with this observation:

It may be that conflicting decisions in other jurisdictions may give rise to a doubt as to the correctness of the decision here; see *Int'l Formed Tubes Ltd. v. Ohio Crankshaft Co. et al.* (1965), 50 D.L.R. (2d) 214, [1965] 1 O.R. 621, but I do not think the principle can be extended to a United Stated decision directly contrary to that of our Courts of Appeal and one which expressly stated (see *Lear,* supra, p. 671) that it was overruling established United States law.

[64]    The circumstances have not changed. The ruling of the motion judge has set to the side the fresh examination referred to by the judge in *Asturiana.* The effect of her decision is to overtake the process and foreclose evolution of the issue that the process, if followed, would typically direct. I repeat that there is no evidence that would support the motion judge's conclusion that the "price" is "too high" or demonstrate that there is a threat to public trust and confidence in the administration of justice. To the contrary it can be said, as counsel for Loops has, that the facts that have been established show a stronger foundation for upholding the application of estoppel than in either *Louiseville Spinners* or *Asturiana.* In those cases, the no-challenge clause is found in agreements which establish the licensing relationship. In this case, the clause is part of a settlement signed to end litigation which explicitly addressed the validity of the applicable

---

[57] *Asturiana de Zinc v. Canadian Electrolytic Zinc Ltd, ibid,* para. 5. For a further reference to *Louiseville Spinners* see para. 6
[58] *Ibid,* paras. 7 and 8

Redacted

patents.[59]  The no-challenge clause demonstrates that, as between the parties, the issue of validity is at an end.

[65]    The motion judge relied on *Lear* and *Massillon-Cleveland-Akron Sign Co.* There is, in this reliance, an implicit assumption that these cases are fully demonstrative of the applicable law in the United States or, given that the two cases were referred to in the decision of the court in Washington refusing a stay, that the law they demonstrate should apply to this situation. Neither is correct. Neither *Lear* nor *Massillon-Cleveland-Akron Sign Co.* (or the decision of the Washington court) are dispositive of the factual circumstances and issues in play in this case.

[66]    In *Flex-Foot, Inc. v. CRP, Inc.*[60] the parties had been engaged in a long-standing dispute concerning the infringement by the defendant of patents owned by the plaintiff (identified in the decision as Springlite). The first litigation was settled. Springlite claimed to have settled for economic reasons. It could not afford to defend the claim. Within that settlement, Springlite did not acknowledge it had infringed. The agreement did not bar Springlite from later challenging the validity of the patent. Four years later Springlite brought an action seeking a declaration that the patent was invalid. With a motion for summary judgment briefed and pending, the action settled. There was a settlement agreement and a corresponding licensing agreement. This settlement made it clear that Springlite waived its rights to challenge the validity of the patent. Three years later Flex-Foot filed a further complaint of infringement. As required by the terms of the second settlement, this complaint went to arbitration. The arbitration found that Springlite had infringed the patent owned by Flex-Foot. In defence to the claim Springlite had alleged that the patent was invalid. The matter proceeded to the District Court which affirmed the arbitration award and entered a permanent injunction against Springlite on the basis that it was "collaterally estopped" from challenging the validity of the patent. This was appealed. Springlite did not contend that the provision in the second settlement was anything other than a waiver. Rather Springlite argued that it should be entitled, under the public policy rationale set forth in *Lear*, to renege on its written agreement with Flex-Foot. The court after reviewing the policy rationale for, and the facts in, *Lear* distinguished that case. The licence agreement in *Lear* was not created as part of a litigation settlement:

> In *Lear*, notably, the license did not contain, and was not accompanied by, any promise by the licensee not to challenge the validity of the patent. This distinguishing fact is meaningful because it implicates the important policy of enforcing settlement agreements and *res judicata*. Indeed, the important policy of enforcing settlement agreements and *res judicata* must themselves be weighed against the federal patent laws' prescription of full and free competition in the use of ideas that are in reality a part of the public domain.[61]

[67]    This is important for two reasons: first it demonstrates that any implicit assumption that the *Lear* and *Massillon-Cleveland-Akron Sign Co.* are comprehensively demonstrative of the law

---

[59] *Factum of the Plaintiffs/Appellants,* para. 65
[60] 238 F. 3d. 1362 (Fed. Cir. 2001) (U.S.C.A., Fed. Cir.)
[61] *Flex-Foot, Inc. v. CRP, Inc. ibid,* p. 6 of 8

in the United States is wrong. The court in *Flex-Foot* made clear there were other cases that distinguished *Lear*.[62] Second, the distinction made in *Flex-Foot* matches the observation that a no-challenge clause that is part of a settlement of litigation, where the validity of a patent was in issue, should be sustained.

[68]    This is underscored by *Kenall Mfg. v. Cooper Lighting LLC*.[63] Cooper launched the sale of a series of lighting fixtures. A year later Kenall was issued a patent and told Cooper about it. A year later it filed a patent infringement suit against Cooper. The case settled and the parties entered into a licensing agreement. The licensing agreement included a no-challenge clause:

> Cooper does not admit infringement, validity or enforceability of the Subject Patents, and reserves all defenses to any allegation of infringement related thereto; provided, however, that Cooper shall refrain from contesting the validity, enforceability, or infringement of the Subject Patents in any court of law or other forum unless Kenall asserts the Subject Patents against Cooper products other than the Subject Products.[64]

[69]    Kenall sued Cooper alleging that, beginning in 2008, Cooper breached the License Agreement by failing, among other things, to make royalty payments. As one of its defences Cooper alleged that the patent was invalid. Kenall argued that the no-challenge clause barred the defence. The Court agreed:

> Those arguments fare no better here, particularly given that contract provisions barring future challenges to patent validity are a well-recognized feature of agreements settling patent litigation. See *Baseload Energy, Inc. v. Roberts* , 619 F.3d 1357, 1361-63 (Fed. Cir. 2010) (holding that "[i]n the context of settlement agreements, ... clear and unambiguous language barring the right to challenge patent validity in future infringement actions" is enforceable in light of "the strong policy in favor of settlement of litigation"); *Flex-Foot* , 238 F.3d at 1364, 1370 (enforcing a provision in which a settling defendant "agree[d] not to challenge or cause to be challenged, directly or indirectly, the validity" of the asserted patents). Accordingly, Cooper's invalidity defense is stricken.[65]

[70]    Again, the acceptance of the no-challenge clause in the context of settling litigation dealing with alleged infringement of a patent may be maintained because that timing makes the policy in favour of protecting settlements predominant. Where the agreement is entered into at the outset of the relationship, without litigation, following *Lear* a no-challenge clause may be void, under U.S. law, due to concern for its impact on the free use of ideas in the public domain.

---

[62] The Court listed three: *Hemstreet v. Spiegel, Inc.,* 851 F.2d 348, 7 U.S.P.Q.2D (BNA) 1502 (Fed. Cir. 1988); *Foster v. Hallco Mfg. Co.,* 947 F.2d 469, [*1369] 20 U.S.P.Q.2D (BNA) 1241 (Fed. Cir. 1991); *Studiengesellschaft Kohle M.B.H. v. Shell Oil Co.,* 112 F.3d 1561, 42 U.S.P.Q.2D (BNA) 1674 (Fed. Cir. 1997).
[63] 354 F. Supp. 3d 877 (N.D. Ill. 2018)
[64] *Kenall Mfg. v. Cooper Lighting LLC. ibid,* p. 3
[65] *Ibid,* p. 8

Redacted

[71]    The decision in the case proceeding in Washington to refuse a stay referred not only to *Lear* and *Massillon-Cleveland-Akron Sign Co.* but also to *Flex-Foot.* It acknowledges that final judgments, consent decrees and settlement agreements with no-challenge clauses relating to patents actually "in suit" are to be contrasted to pre-litigation settlements containing no-challenge clauses. The Court recognized that no-challenge clauses in agreements made prior to litigation are to be treated differently. But there was no consideration of the implications of the no-challenge clause in issue being entered into as part of the settlement of litigation in Canada. For her part, despite reference to *Flex-Foot* in the decision in Washington, the motion judge made no mention of that case and gave no consideration to how it might apply to the case at hand.

[72]    I return to the issue of whether a strong *prima facie* case is present. The residual concern is whether there is material before the Court rebutting that understanding. There is no evidence that does so and the case law, as reviewed, confirms that there is a strong *prima facie* case that the no-challenge clause should be enforced. It is a term of a contract between the parties. In Canada the principle of estoppel has not been set aside. The no-challenge clause was part of a settlement of a case in which the validity of the patents held by Loops was in issue.

[73]    I find that the motions judge erred in failing to find there is a strong *prima facie* case that Maxill Canada cannot rely on a defence that the applicable patents are invalid.

*Irreparable Harm*

[74]    This leaves consideration of the remaining two parts of the test: irreparable harm and the balance of convenience. There are cases that have held that where there is a breach of a negative covenant irreparable harm and balance of convenience need not be established. This proposition was considered in *Van Wagner Communications Co., Canada v. Penex Metropolis Ltd.*[66] The judge concluded:

> In my view, the comments by both Sharpe JA in his text on Injunctions as quoted above and by Mr. Justice Pitt in *Carecor*, supra, are not inconsistent with the test enunciated in *Saskatchewan Water*, supra. Each of those respected judges are saying, in my view, that in the case of an interlocutory injunction to restrain a breach of a negative covenant, irreparable harm and the balance of convenience need to be still considered. The extent of the consideration, however, will be directly influenced by the strength of a plaintiff's case. Even where there is a clear breach of a negative covenant which is reasonable on its face, the issues of irreparable harm and balance of convenience cannot be ignored. They may, however, become less of a factor in reaching the final determination of the issue depending on the strength of the plaintiff's case.[67]

[75]    The motion judge found that the refusal to grant the injunction would not cause Loops irreparable harm. This is because allowing the Maxill interests to proceed with a defence that the

---

[66] *Supra* (fn. 18), paras. 37-39
[67] *Van Wagner Communications Co., Canada v. Penex Metropolis Ltd., ibid,* para. 39

U.S. patent is invalid would not finally determine the issues between the parties. It would allow the U.S. court to hear the evidence and determine the issue:

> Refusing to grant an injunction preventing Maxill to raise this defence simply allows the U.S. Court to receive evidence and hear submissions with respect to the patent itself. It does not and cannot result in a finding that the patent is invalid.[68]

[76]    This conclusion is based on the motion judge's view that refusing to prohibit Maxill Canada from advancing a defence based on the invalidity of the patent would not necessarily result in irreparable harm to Loops. As perceived by the Maxill interests this renders the harm speculative and not irreparable. As understood by Loops this is harm that is contingent on the outcome of the trial and that being so, the case law demonstrates it to be irreparable. To my mind this misses the point.

[77]    If the injunction is not granted, the case in the United States will continue unaffected by what has taken place in Canada. The no-challenge clause, if it is sustained, would provide a substantive argument for Loops in advancing its claim against Maxill Canada and resisting the application by Maxill Ohio that it is not in breach of a valid patent. Both are parties in the consolidated action. By adopting the reasoning she did, the motion judge allowed Maxill to do the very thing it agreed it would not do in its settlement of the original Federal Court action. The loss of Loops' ability to hold Maxill to its bargain and prohibit Maxill from attacking the validity of the U.S. patent is an irreparable harm. It will change the nature of the case that goes forward. The strategy adopted, the evidence presented, the law relied on and the risks Loops will face in the litigation will all be different. What is emphasized and what is minimized will be adjusted or altered. There is nothing speculative or contingent about this. The loss of the ability to rely on a proper legal right or position is a harm that, once the proceeding is complete, cannot be recovered in damages.

*Balance of Convenience*

[78]    I turn now to the balance of convenience. The motion judge found the balance of convenience to favour Maxill Canada. Why? Because if granted, the injunction would prevent the Maxill interests from arguing that the U.S. patent was invalid. In such circumstances they would be at risk of having to pay damages. This seems at odds with her ruling in respect of irreparable harm. There, she reasoned that the loss of market share to Loops is not irreparable harm because the results of the trial are speculative.

[79]    Balance of convenience and irreparable harm are sometimes interrelated. They are in this case. The irreparable harm is the loss of the ability to rely on the no-challenge clause. It would be better to determine whether the no-challenge clause can be relied on before proceeding further. If a trial proceeds, the patent is found to be invalid and it is subsequently determined that the Maxill interests should have been estopped from utilizing invalidity as a defence, rectifying the situation will be problematic.

---

[68] *Loops v. Maxill Inc., supra* (fn.16), para. 85

[80]    The balance of convenience lies with Loops. This is particularly so, given the strength of its case.

*Undertaking as to Damages*

[81]    There is a dispute between the parties as to whether Loops provided an undertaking as to damages at the time of the motion. Counsel for Loops provided such an undertaking prior to the hearing of this appeal.

[82]    Maxill did not raise the absence of an undertaking before the motion judge. Leave is granted to file the undertaking on the appeal in compliance with rule 40.2.

*Conclusion*

[83]    For the reasons reviewed herein the appeal is granted and the order of the motion judge is set aside. An Order will go granting the Appellants an interim and interlocutory injunction prohibiting the Respondent, Maxill Inc. from challenging the validity of U.S. Patent No. 8,448,285 either directly or indirectly.

*Costs*

[84]    The parties have made submissions as to costs. Loops requests costs on a substantial indemnity scale of $88,401.00. Maxill Canada has produced a Bill of Cost, on a partial indemnity scale, of $23,328.60. As the successful party costs are awarded to Loops. However, we see no reason that they should be at an elevated scale. Costs to Loops are fixed at $25,000. This is inclusive of the $5,000 awarded on the motion for leave to appeal.

*Redaction of the Reasons for Decision*

[85]    Part of the record in this case has been sealed. The parties have asked that the reasons for decision be provided to them prior to release to the public, so that they can agree on redactions necessary to protect the confidentiality of the information in the sealed record.

[86]    The parties are to agree on a blacklined version of the reasons and to provide it to the Divisional Court office, to the attention of Swinton J., within two weeks of the release of this decision.

Lederer, J.

I agree                                   Swinton, J.

I agree                                   Penny, J.

**Released:** October 27, 2020

Redacted

## CONFIDENTIAL AND SUBJECT TO A PROTECTIVE ORDER – NOT TO BE RELEASED TO THE PUBLIC UNTIL REDACTED

**CITATION:** Loops L.L.C. v. Maxill Inc., 2020 ONSC 5438
**DIVISIONAL COURT FILE NO.:** 2447-16
**DATE:** 20201027

### ONTARIO

### SUPERIOR COURT OF JUSTICE

### DIVISIONAL COURT

**Swinton, Lederer, Penny, JJ**

**BETWEEN:**

LOOPS, L.L.C. and LOOPS FLEXBRUSH, L.L.C.

Plaintiffs/Appellants

**– and –**

MAXILL INC

Defendant/Respondent

**REASONS FOR JUDGMENT**

Lederer J.

**Released:** October 27, 2020

Redacted