**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| MAXILL INC., MAXILL INC.,<br><br>Plaintiffs,<br>vs.<br><br>LOOPS, LLC AND LOOPS FLEXBRUSH, LLC<br>Defendants. | CASE NO.: 2:17-CV-01825-TSZ<br><br>**JOINT STATUS REPORT**<br><br>**AS REQUIRED BY MINUTE ORDER ENTERED: APRIL 17, 2026** |
| LOOPS, L.L.C., et al.<br><br>Plaintiffs,<br><br>v.<br><br>MAXILL INC., et al.<br><br>Defendants. | |

Maxill, Inc. and Maxill, Inc. (collectively, "Maxill") and Loops, LLC and Loops, Flexbrush, LLC (collectively, "Loops") jointly file this updated Joint Status Report (the

"Report") as required by the Court's Minute Order entered on April 17, 2026 (the "Order"). The Order requires the parties to file a Joint Status Report within fourteen (14) days of the date of the Order.

## A. THE PARTIES AND CLAIMS

The Court will recall that this is a patent case which resulted in the transfer and joinder of multiple actions between the Parties. In 2017, Loops initially sued Maxill in Utah for claims of patent infringement, and in defense, Maxill filed for a declaratory judgement against Loops in this Court for non-infringement and invalidity. Thereafter, the parties stipulated to consolidate the two actions and this action ensued. (Dkt. No. 15, 17).

In this action, Maxill petitions the Court for a judgment declaring the United States Patent No. 8,448,285 (the "'285 Patent") invalid, and unenforceable. Maxill also petitions the Court for a judgment declaring that Maxill's import, export, manufacture, use, offer for sale, or sale of Maxill's Supermaxx institutional line of toothbrush ("Supermaxx Product") has not and will not, direct or indirectly, literally or under the doctrine of equivalents, infringe any claims of the '285 Patent. Maxill also alleges that the '285 Patent was obtained and is exploited and used by Loops in an improper manner.

Loops asserts that Maxill willfully infringes the '285 Patent by using, promoting, marketing, advertising, distributing, importing, having made, offering for sale and/or selling Maxill's Supermaxx Product.

## B. SUMMARY JUDGMENT, APPEAL AND MANDATE

Before this action was stayed, both Loops and Maxill filed motions for partial summary judgment. Loops moved for partial summary judgment of infringement. (Dkt. No. 81.) Maxill

moved for partial summary judgment of invalidity and unenforceability. (Dkt. No. 84.) The Court denied Loops' motion for partial summary judgment of infringement and granted Maxill's "cross-motion" for summary judgment of non-infringement. (Dkt. No. 124.) In doing so, the Court dismissed Loops' infringement claim and counterclaim against Maxill with prejudice. (*Id.*) The Court also issued a declaratory judgment of non-infringement in Maxill-Ohio's favor. (*Id.*) Based on such, the Court struck Maxill's pending motions (i) for partial summary judgment on invalidity and unenforceability as moot. (*Id.*) The Court also struck Maxill-Ohio's claims seeking declaratory judgment regarding invalidity and unenforceability without prejudice as moot. (*Id.*)

Loops appealed this Court's decisions (Dkt. No. 151) and on December 31, 2020, the Federal Circuit Court of Appeals reversed the Court's order of summary judgment of noninfringement against Loops and on February 8, 2021, issued its mandate. (Dkt. Nos. 157, 158, 159.).

**C. THE CANADIAN INJUNCTION**

On October 27, 2020, during the pendency of Loops' appeal to the Federal Circuit of this Court's decision in this action (Dkt. No. 151), the Ontario Superior Court of Justice Divisional Court issued an opinion and an interim and interlocutory injunction prohibiting Maxill Inc. from challenging the validity of the '285 Patent either directly or indirectly. ("Canadian Interlocutory Injunction"). (*See* Dkt. Nos. 162, 162-1, 162-2.).

**D. STAY OF THIS ACTION PENDING COMPLETION OF CANADIAN ACTION; STATUS OF CANADIAN ACTION**

The Federal Circuit Court of Appels' reversal and mandate prompted the Court's Order for a Joint Status Report (Dkt. No. 160) which the parties filed on February 24, 2021, pending the Canadian Action. (Dkt. No. 160, 161). On March 10, 2021, "[h]aving reviewed the parties' Joint Status Report.. and an unredacted copy of a decision issued by the Divisional Court of the Superior Court of Justice in Onterio, Canada…" the Court stayed this action "pending further order." (Dkt. No. 167). The Court has continued to say this action during the pendency of the Canadian Action (Dkt. Nos. 175, 177, 179).

**E. STATUS OF CANADIAN ACTION**

The Canadian Action's trial date, which was initially scheduled for December 8, 2025, was rescheduled to April 20, 2026, due to Ontario Court's case backlogs at the time. However, the parties could not get to trial on April 20, 2026, and now parties are uncertain as to when they can proceed to trial.

**F. PRESENT POSITIONS OF THE PARTIES**

The Parties further set forth their respective positions below.

**I. LOOPS' POSITION:**

Loops provides updates from the corresponding litigation between the parties in Canada (*see* Declaration of Kassandra Shortt, Loops' Canadian trial counsel, filed concurrently herewith) and submits to a further stay of this action on the same conditions previously ordered. Loops reserves all rights to assert procedural and substantive claims, defenses and arguments in this action once the stay is lifted. Because Maxill has chosen in Section F.II below to include information that Loops believes falls outside the intended scope of this Report—where the previous Joint Status Reports have, since the stay was first ordered on March 10, 2021, been limited to updating the Court on the Canadian Action—and constitutes improper argument and

mischaracterization of the record, Loops provides the following additional information in support of its position.

In the parties' Joint Status Report filed on February 24, 2020, Maxill, alone and with no stipulation with Loops, requested a stay of this action (*see* Dkt. No. 161, p. 12), while Loops indicated its desire to move forward with litigation, proposing a motion and trial schedule. (Dkt. No. 161, p. 13.) The Court found good cause to order a stay pending further order of the Court (Dkt. 167) and the stay remains in place. (Dkt. Nos. 175, 177, 179.)

Since the filing of this action, the USPTO issued additional patents to Loops including one patent issued during the pendency of the current stay. Specifically, the USPTO issued U.S. Patent Nos. 11,013,311 (the "'311 Patent") and 10,334,940 (the "'940 Patent") to Loops on July 2, 2019 and May 25, 2021, respectively.

On July 16, 2025, Loops filed a Complaint against Maxill Canada and its principal John Shaw ("Shaw") in the U.S. District Court for the Southern District of California, Case No. 3:25-cv-01814-JLS-DDL (the "California Action") for infringement of the '311 and '940 patents based on the importation and sale of the Supermaxx Product in the U.S. (Declaration of Zachary S. Tedford ("Tedford Decl.") ¶2, Ex. 1.) Maxill Canada and Shaw moved to dismiss, transfer, or stay that case. (Tedford Decl. ¶3, Ex. 2.) In support of Shaw's personal jurisdiction challenge, he testified by affidavit that his and Maxill Canada's only relevant connections to the U.S. are in the state of Ohio. (Tedford Decl. ¶4, Ex. 3.)

Rather than endure further delay and expense fighting over jurisdiction, on October 30, 2025, Loops voluntarily dismissed the California Action and filed a Complaint—and later a First Amended Complaint—against Maxill Canada, Maxill Ohio, Maxill Realty, Inc., an Ohio corporation ("Maxill Realty"), BaderCap Pty Ltd. ("BaderCap"), and Shaw in the U.S. District

Court for the Northern District of Ohio, Case No. 4:25-cv-02346-BYP (the "Ohio Action"). (Tedford Decl. ¶5-7, Exs. 4-6.) Loops chose Ohio because Shaw identified it as the state with which Maxill Canada conducts business, the state into which Maxill Canada imports the accused Supermaxx Product, the state in which Maxill Ohio receives and stores the product, and the state from which Maxill Ohio distributes it. Other than naming additional defendants and adding inducement allegations against Shaw, the patent infringement claims in the Ohio Action are identical to those asserted in the California Action. Loops also asserts state law fraudulent transfer claims against Maxill Realty, BaderCap and Shaw based on Ohio-related activity, conduct, and transactions.

On December 9, 2025, Maxill Ohio, Maxill Realty, and a third-party, Maxill Dental, Inc., (collectively, the "Maxill Debtors") filed for Chapter 11 bankruptcy, triggering an automatic stay as to Maxill Ohio and Maxill Realty in the Ohio Action. (Tedford Decl. ¶8, Ex. 7.) These bankruptcy proceedings affect the timing and posture of the Ohio Action and therefore inform the status of related U.S. proceedings involving the parties. Loops actively participated as a creditor in the Maxill Debtors' short-lived bankruptcy proceedings. (Tedford Decl. ¶9.) The Maxill Debtors failed to comply with numerous bankruptcy rules and disclosure requirements which prompted the U.S. Trustee to file (a) a motion to dismiss or convert the Maxill Debtors' bankruptcy cases to Chapter 7, and (b) a motion to disqualify the Maxill Debtors' counsel based on failure of bankruptcy their counsel to disclose various and readily apparent conflicts of interest between and amongst the Maxill Debtors, including those implicated in Loops' state law fraudulent transfer claim. (Tedford Decl. ¶10-11, Exs. 8-9.) On April 14, 2026, a hearing was held on the U.S. Trustee's motion to dismiss or convert and the court decided to dismiss the consolidated Maxill Debtors' bankruptcy cases for good cause. (Tedford Decl. ¶12, Ex. 10.)

On April 3, 2026, Maxill, through local counsel in Ohio, sent Loops' counsel a letter asserting that Loops' infringement allegations in the Ohio Action violate Fed. R. Civ. P. 11 based on Maxill's anticipated invalidity and unenforceability defenses (the "April 3, 2026 Letter"). (Tedford Decl. ¶13.) On April 17, 2026, Loops, through its local counsel in Ohio, sent Maxill's counsel a letter giving notice that the April 3, 2026 Letter failed to comply with Rule 11 which requires any Rule 11 sanctions motion to first be served (but not filed) on the opposing party, allowing a 21-day safe harbor period after service to respond (*see* Fed. Civ. R. 11(c)(2)); that Loops remains confident that its amended complaint is factually and legally warranted, presented in good faith, and objectively reasonable; and that should Maxill wish to follow proper Rule 11 procedure, Loops will respond accordingly. (Tedford Decl. ¶14.) Notably, Maxill has not yet served a procedurally proper Rule 11 letter and motion. (Tedford Decl. ¶15.)

While the Canadian Action remains the primary basis for the existing stay, the related U.S. proceedings described above reflect that other disputes between the parties continue to be actively litigated in U.S. courts. Loops respectfully submits that maintaining the stay in this action remains appropriate under the Court's prior orders, with the understanding that, once the Canadian Action reaches a posture that permits further proceedings in this action, Loops will be prepared to move forward expeditiously without further delay.

## II. MAXILL'S POSITION:

Despite having stayed this action since 2021, the parties are still uncertain as to when the Canadian Action can proceed to trial in Ontario Canada, due to Onterio court's caseload. (*See*, Dkt. Nos. 161, 167) (*See*, Declaration of Catherine Patterson, ¶¶6-13). According to Maxill's Canadian counsel, based on the Ontario Court's trial scheduling process and the high backlog, the Canadian Action may be pushed out to 2027 without any guarantee. (*Id*, ¶¶12-13).

As the Court may recall, in 2019, Loops initially sought to stay this action based on their argument that the Canadian Action (regarding the Canadian settlement agreement with the "no-challenge" clause) must be resolved first. (*See,* Dkt. No. 50). Loops argued that Maxill could not attack the '285 Patent in this action because the parties had a settlement agreement in Canada, which mentions a "no-challenge" clause. (*Id*.). This Court denied Loops' request, reasoning among other things that: (1) Maxill Ohio was not a party to the Canadian settlement agreement; and (2) the "no-challenge" clause contained in the prior settlement agreement in Canada is unenforceable with regard to the '285 Patent in this action. (*See*, Dkt. No. 70, ¶ 1). **Therefore, this Court has already determined that this action can continue regardless of the Canadian Action and the Canadian Settlement Agreement.**

However, despite this Court's order on July 9, 2019 (*Id*.), on October 27, 2020, Loops separately obtained an Interlocutory Injunction from the Ontario court in Canada, where the Canadian Action regarding the Canadian settlement agreement is pending. (Dkt. No. 162-1, Exhibit A). Then, on December 31, 2020, the Federal Circuit Court's decision from Loops' appeal in this action was also issued with a mandate. (Dkt. No. 157). Therefore, in light of the Canadian Interlocutory Injunction and the mandate, Maxill voluntarily agreed to stay this action to alleviate further legal predicament that was caused by the Canadian Interlocutory Injunction. (*See*, Dkt. No. 161 at Section II).

The stay in this action essentially created a "stand-down" status of the parties' U.S. litigation, also promoting judicial economy. However, in 2025, Loops disturbed this stand-down nature of the U.S. litigation proceedings by initiating two (2) new lawsuits against Maxill, first in California (Case No. 25CV1814 JLS DDL), and then in Ohio (Case No. 4:25-cv-02346-

BYP). (*See*, Declaration of Boyoon Choi, ¶¶3-4, Attachment 1; Declaration of Mark McDougall, filed concurrently herewith).

On July 16, 2025, Loops sued Maxill in the U.S. District Court for the Southern District of California, alleging that Maxill was infringing Loops' U.S. patents, 11,013,311 (the "'311 Patent") and 10,334,940 (the "'940 Patent") (collectively the "New Patents"). (*See,* Declaration of Boyoon Choi, ¶3, Attachment 1). These New Patents both originate from the '285 Patent relating to the same accused toothbrush product that is the subject of this action. (*Id*., *See also*, Dkt. No. 72, pg. 3, ¶19-25). It is also worth noting that previously in this action, Loops attempted to include the '940 Patent by amending the complaint and representing that:

> As the [sic] both depend from the same application, the '940 patent is directly related to the '285 patent asserted in the original complaint. Loops asserts that Maxill infringes claims of the '940 patent based on the same accused products as in the original complaint, i.e., certain SuperMaxx products. Loops' assertions of infringement of the '940 patent are thus directed to the same parties, products, subject matter, legal and factual issues and purpose as the original complaint. (Dkt. No. 72, pg. 3, ¶19-25).

This Court denied Loops' request, stating: "*[i]f Loops wishes to pursue claims relating to the United States Patent No. 10,334,940, it may commence a new action and pay the required filing fee,*" which was consistent with procedural posture of this case at the time – as a claim construction order for the '285 Patent was already issued on the same day Loops filed their motion to amend. (Dkt. Nos. 71, 80, ¶2,).

In response to Loops' new lawsuit in California, Maxill hired another patent litigation counsel in California, and on October 1, 2025, submitted a motion to "*dismiss, transfer or stay*" the California action. (*See,* Declaration of Boyoon Choi, ¶5, Attachment 2, included therewith, the "*Declaration of Lisa M. Griffith, Esq*," ¶4). Maxill raised in its motion that Loops' lawsuit in California was improper forum shopping – and asked the court to, at minimum, transfer the

California action to this Court, where the parties have been litigating since 2017. (*Id.,* the "*Memorandum of Points and Authorities in Support of Motion to Dismiss, Transfer or Stay*", pg. 1, ¶¶1-8). However, on October 31, 2025, without even responding to Maxill's extensive motion, Loops voluntarily dismissed the California lawsuit, essentially wasting Maxill's time and money – only to file another lawsuit in Ohio. (*Id.*, ¶6, Attachment 3).

On October 30, 2025, Loops filed yet another lawsuit against Maxill, this time in the U.S. District Court for the Northern District of Ohio, Eastern Division. (*See,* Declaration of Mark McDougall, ¶¶2-4, Attachment 2). Again, Loops asserted the same New Patents as it did in California. (*Id.*, ¶4). Regardless, Maxill was forced to hire yet another patent litigation counsel in Ohio, and on February 19, 2026, filed another motion to dismiss certain claims or transfer the Ohio action to this Court. (*Id.*, Attachments 1 and 3). As of this date, the Ohio court has not ruled on Maxill's motion. (*Id.*, ¶5). However, based on the reasons set forth in Maxill's briefing in the Ohio action, Maxill is hopeful that the Ohio court will transfer the Ohio case to this Court, which is the more proper venue to litigate the New Asserted Patents that relate to the same accused toothbrush products. (*Id.*). It would only serve judicial economy and ease the burden on both parties to resolve the Ohio action in this Court, which is more familiar with Loops' patent family, which has been subject to parties' litigation in this Court since 2017. (*Id.*).

On April 3, 2026, Maxill, through its local counsel in Ohio, notified Loops that its allegations of infringement of the New Patents in Ohio violate Fed. R. Civ. P.11 (the "April 3, 2026 Letter"). (*Id.*, ¶6, Attachment 4). The April 3, 2026 Letter explained in detail that Loops knew or should have known that the New Patents are invalid and/or unenforceable and requested that Loops voluntarily withdraw the Ohio complaint. (*Id.*) Loops responded on April 17, 2026, but did not directly address the invalidity or unenforceability issues that were raised.

Instead, Loops indicated that it intends to continue pursuing its infringement claims and force the parties to incur additional litigation costs. (*Id.*, ¶7, Attachment 5). Therefore, based on Loops' own actions, Maxill has no choice but to continue the litigation in the U.S – both in Ohio and in this Court, at least until the Ohio court transfers the case before it. (*Id.*).

Though Maxill has been eagerly waiting to go to trial in Canada to resolve the legal predicament caused by the Canadian Interlocutory Injunction, the Ontario court in Canada cannot guarantee the next available trial date at this time. (*See*, Declaration of Catherine Patterson, ¶¶12-13). In fact, Maxill has been eagerly waiting since 2017, when this action started (*See*, Dkt. Nos. 1, 17) to resolve the dispute, the lengthy dispute which started since 2012, with the Canadian Settlement Agreement in 2014. (Dkt. No. 50-1). Maxill has waited long enough. Loops has also recently shown that it is ready to proceed with the parties' dispute in the U.S. by filing similar claims in not only one but two different jurisdictions since last year, one of which in Ohio may be transferred to this Court this year. Provided that Maxill has asked to transfer the Ohio case in February of this year, Maxill is hoping that the Ohio court will make its decision on transferring the case soon. Therefore, Maxill does not see the need for further stay in this action and rather wishes to proceed with the litigation process in the U.S. to hopefully resolve the matter as soon as possible.

The interests of justice favor proceeding with the case before this Court and continued stay of such proceedings no longer serves justice. No grounds for automatic stay exist even where parallel proceedings involving similar claims are first filed in Canada. *See generally, Teck Metals Ltd. v. Certain Underwriters at Lloyd's London* (CV-05-411-LRS) (E.D. Wa.), *affirmed by Ninth Circuit*. Rather, a stay should only proceed where Loops establishes that "the competing interests [that] will be affected by the granting or refusal to grant a stay must be

weighed." *Ali v. Trump*, 241 F. Supp. 3d 1147, 1152 (W.D. Wash. 2017), *see also Clinton v. Johnes*, 520 U.S. 681, 708 (1997) ("The proponent of a stay bears the burden of establishing its need."). While courts may stay proceedings while related appeals are pending, a "stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time." *Dependable Highway Express, Inc. v. Navigators Ins. Co*., 498 F.3d 1059, 1067 (9th Cir. 2007). It is now abundantly clear that the Ontario court will not consider the claims before it in the near future, but rather indefinite time. Such delay, especially given Loops pattern of commencing multiple and new actions, damages both parties and provides substantial reason for this Court to proceed.

Dated May 1, 2026.

*/s/ Boyoon Choi*
____________________
Boyoon Choi (WSBA #44939).
b.choi@ccl.law
**CHOI CAPITAL LAW PLLC**
1420 Fifth Ave., Suite 2239
Seattle, WA 98101
Phone: 206-588-0463
Fax: 206-971-1650
***Attorneys for Plaintiff / Counterclaim Defendant***

*/s/ Philip P. Mann*
____________________
Philip P. Mann (WSBA #28860)
**MANN LAW GROUP PLLC**
403 Madison Ave. Ste. 240
Bainbridge Island, WA 98110
Phone : 206-436-0900

phil@mannlawgroup.com
***Attorneys for Defendants / Counterclaim Plaintiffs***

**CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2026, a true and accurate copy of the foregoing and all accompanying documents was filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notification of such filings to all attorneys of record.

DATED May 1, 2026.

*/s/ Crockett Vinson*
Crockett Vinson
**CHOI CAPITAL LAW PLLC**